Harold **KORNFELD** and Thelma Kornfeld, stockholders of The Norwich Pharmacal Company, suing on behalf of themselves and all other stockholders similarly situated and on behalf and in the right of The Norwich Pharmacal Company, Plaintiffs-Appellants,

v.

Thomas J. **EATON** and The Norwich Pharmacal Company, Defendants-Appellees.

No. 142, Docket 28315.

United States Court of Appeals Second Circuit.

Argued Nov. 1, 1963.

Decided Feb. 3, 1964.

Morris J. Levy, New York City, for plaintiffs-appellants.

Philip T. Seymour, Syracuse, N. Y. (Hancock, Dorr, Ryan & Shove, Syracuse, N. Y., on the brief); (William L. Allen, Jr., Syracuse, N. Y., of counsel), for defendant-appellee Eaton.

Bradford S. Allen, Norwich, N. Y. (Bernard J. Schulte and Terrence A. Elkes, Norwich, N. Y., on the brief), for defendant-appellee The Norwich Pharmacal Co.

Walter P. North, Assoc. Gen. Counsel, Securities and Exchange Commission, Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, Jacob H. Stillman, Atty., Securities and Exchange Commission, on the brief), as amicus curiae.

Before SWAN, CLARK[1] and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge:

The principal issue presented on this appeal is the validity of the Securities and Exchange Commission Rule X-16B-6.[2] Plaintiffs, common shareholders in the Norwich Pharmacal Company, brought suit pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78P(b)[3] to recover profits which accrued to defendant Eaton, a director and officer of Norwich, as the result of his transactions in Norwich stock. On August 23, 1956, Eaton acquired a restricted option to purchase 2,000 shares of common stock at $12.95 per share. Its market value was then $13.63 per share. On May 6, 1960, he sold 2,000 shares of Norwich stock for the net sum of $89,847.81. On July 12, 1960, he exercised his option and purchased 2,000 shares from Norwich, paying the option price. Before the action commenced, Norwich requested Eaton to pay over a sum which represented the recoverable profit computed in accordance with the aforesaid rule, and he did so. However, plaintiffs contended that the rule is invalid, and that the recoverable profit was the difference between the amount realized on Eaton's sales of stock, less the market value of the stock purchased on the date on which he acquired his option to purchase it.[4] The suit was instituted to recover the balance claimed to be due.

■ Plaintiffs and defendant Eaton moved for summary judgment, and the District Court granted defendant's motion. Judge Weinfeld's opinion, reported at 217 F.Supp. 671 (S.D.N.Y.1963), upheld the validity of the rule as within the SEC's power to exempt "transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection," and within its power under section 3(a) (12) of the Act, 15 U.S.C. § 78c(a) (12), to exempt securities from the operation of any provisions which do not by their terms apply to exempted securities. His

1. Judge Clark heard argument of this appeal but died before any opinion was prepared. Before his death he had written a memorandum and voted in conference to reverse.

2. The rule provides, in pertinent part:

"(a) To the extent specified in paragraph (b) of this section the Commission hereby exempts as not comprehended within the purposes of section 16(b) of the Act any transaction or transactions involving the purchase and sale or sale and purchase of any equity security where such purchase is pursuant to the exercise of an option or similar right either (1) acquired more than six months before its exercise, or (2) acquired pursuant to the terms of an employment contract entered into more than 6 months before its exercise.

"(b) In respect of transactions specified in paragraph (a) the profits inuring to the issuer shall not exceed the difference between the proceeds of sale and the lowest market price of any security of the same class within 6 months before or after the date of sale. Nothing in this rule shall be deemed to enlarge the amount of profit which would inure to the issuer in the absence of this section."
It was promulgated effective November 29, 1950.

3. "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, * * * shall inure to and be recoverable by the issuer * * *. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover * * * any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

4. They rely on Steinberg v. Sharpe, 95 F. Supp. 32 (S.D.N.Y.), aff'd 190 F.2d 82 (2 Cir. 1951).

opinion thoroughly explores the considerations which went into the formulation of the rule, and shows why it is consistent with the statutory purpose of discouraging short term speculation by insiders while permitting them to retain the benefits of long term investment in the corporations with which they are connected. We are in accord with his views on both points, and, in particular, agree that the Commission's power to exempt securities and transactions includes the power to grant the partial exemption which the rule represents. Nothing in Rattner v. Lehman, 193 F.2d 564 (2 Cir. 1952) or Greene v. Dietz, 247 F.2d 689 (2 Cir.1957) requires a contrary conclusion. In the former case, the provisions of Rule X–16B–6 were not in issue, and the statement that "[t]he Commission may exempt 'transactions'; but it cannot reduce the liability imposed by section 16(b)" should not be taken as a blanket denial of all power in the Commission to fashion partial exemptions. In the latter, the court's doubts concerned a regulation which we felt might have violated the purpose of the statute by granting complete immunity to transactions involving stock acquired through options. We indicated that the possibility of short swing manipulations was as great in cases where such stock is sold as in any other situation. By contrast, the present rule reaches and squeezes out all the possible elements of short term profit in transactions where stock is acquired through options and then sold within six months. It is accordingly consistent with the statutory purposes.

■ Judge Weinfeld's opinion adequately answers most of the contentions raised on this appeal, and we refer to it for fuller discussion. Two of appellants' points, which argue that the rule conflicts not only with the statutory purpose but with its express terms, require brief comment. It is urged that, as the rule operates, reference to a period longer than the statutory six months may be necessary to determine the recoverable profits. It is true that the rule in effect provides for determining cost by the lowest market price of the shares within six months before or after the date of sale. However, this does not conflict with the statute, since liability attaches only where there is a purchase, pursuant to the exercise of an option, within six months of a sale. How the profit is computed is quite another matter. Actually, the Commission's rule limits the period to which it is necessary to refer far more than plaintiffs' position, which requires determination of the value of the option on the date it was acquired. This may be, as it is in this case, many years before the date of sale.

■ A somewhat similar question is raised by the plaintiffs' contention that the rule conflicts with the statute's two-year period of limitations. They argue that, if this period commences to run on the date of the actual sale, but under the rule it is necessary to wait six months thereafter before determining the "cost" of the shares sold, the time to sue will be cut down to only eighteen months. On the other hand, they say, if the limitations period commences to run six months after the sale, "we would be doing violence to the statute itself because, (a) the statute would be made applicable to the Rule, rather than the Rule to the Statute, and (b) the issuer's time for commencing the action would be extended beyond the two-year period provided for in the statute." The Commission, in its brief *amicus curiae,* indicates its position is that the period commences on the date of sale (or purchase, if that is later), and that the problem raised thereby does not differ essentially from any transactions giving rise to statutory liability. When any insider purchases and then sells stock within six months, the Commission notes, an issuer or shareholder desiring to recover the maximum possible amount may have to wait an additional six months before bringing suit, since stock may be repurchased during that period at a lower figure than what was originally paid. Although the two situations are not precisely parallel, we are satisfied that no serious conflict is presented between the

statutory limitations period and the rule. For example, the suit might be brought immediately with profit computed on the basis of the lowest market price of the stock in the six months preceding the sale. If the price of the stock should later drop, the pleadings could be amended to reflect that fact.

The judgment is affirmed.