**B. T. BABBITT, INC., Plaintiff-Appellee,**

v.

**Marshall S. LACHNER, Defendant-Appellant.**

**No. 438, Docket 28756.**

United States Court of Appeals
Second Circuit.

Argued April 23, 1964.

Decided May 19, 1964.

256

Marshall C. Berger, of Weil, Gotshal &
Manges, New York City (Gabriel Kaslow,
New York City, of counsel), for plaintiff-
appellee.

Patricia Hatry, of Davis, Gilbert, Le-
vine & Schwartz, New York City (Joshua
Levine, of counsel), for defendant-appel-
lant.

Before WATERMAN, KAUFMAN
and MARSHALL, Circuit Judges.

KAUFMAN, Circuit Judge.

The primary issues involved in this appeal relate to the computation of "short-swing" profits recoverable by plaintiff B. T. Babbitt, Inc., in an action brought under § 16(b) of the Securities Exchange Act against its former president and director, Marshall S. Lachner. After a trial without a jury, the District Court awarded Babbitt profits of $30,194.12, with interest. For reasons to be explained shortly, we find this amount to be excessive, and we accordingly modify the judgment.

Although essentially undisputed, the relevant facts are somewhat complex. Thus, the stipulations reveal that Lachner served as president and director of Babbitt from December 4, 1957 through June 15, 1960. "In order to induce Lachner to enter this contract of employment," an agreement of December 16, 1957 granted the defendant options to purchase 50,000 shares of Babbitt common stock; these options were first exercisable on or after December 4, 1958, and enabled Lachner, if still a Babbitt employee on that date, to purchase 10,000 shares for 95% of the market price on December 16, 1957, or at $3.44375 per share.

On April 30, 1958, Lachner acquired 591.06 shares of Babbitt Series "B" Preferred Stock by private purchase at the price of $40 per share. As stipulated by the parties, the preferred had a $50 par value, and was convertible into common —at the rate of 8.2 shares of common for each share of preferred—at any time between the date of Lachner's purchase and June 30, 1959. The preferred was redeemable—but not before September 1, 1959—at $50 per share plus accrued dividends.

The first transaction to give rise to the present suit occurred on November 5, 1958, when Lachner converted the preferred into 4,846 shares of Babbitt common stock. Based on his $40 acquisition price for the preferred, the common, in effect, was purchased at a cost to Lachner of $4.878 per share, while the market price for common on this date was $8.-

6875. Approximately four months thereafter, on March 6, 1959, Lachner's wife sold 4,600 shares of Babbitt common, at the then market price of $8.625 per share; the parties have agreed that for present purposes, this sale may be attributed to Lachner.

One week later, on March 13, 1959, Lachner exercised the option granted to him at the commencement of his employment, and purchased 10,000 shares of common at the option price of $3.44375 per share. And finally, to round out the list of relevant but complicated transactions, Lachner sold 5,749 shares of common on May 6, 1959, at a price of $9.-7945 per share.

■ In the words of § 16(b), any profit by an officer or director "from any purchase and sale, or any sale and purchase" of his corporation's equity securities "within any period of less than six months \* \* \* shall inure to and be recoverable by" the corporation. As we explained in Smolowe v. Delendo Corp., 136 F.2d 231, 148 A.L.R. 300 (2d Cir.), cert denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943), the section "was designed to protect the 'outside' stockholders against at least short-swing speculation by insiders with advance information." 136 F.2d at 235. The statute is prophylactic in operation; even absent proof that inside information was, in fact, used, the short-term profits of an officer-director dealing in his corporation's securities must be forfeited to the corporation. Smolowe v. Delendo Corp., supra.

Save for one contention to be considered shortly, therefore, we are not primarily concerned here with determining Babbitt's right to Lachner's profits, but rather with fixing the precise amount of profits to which Babbitt is entitled. On appeal, Babbitt concedes that the District Court erred in its computations, and offers an alternative method of analysis which yields a roughly comparable result. But while we agree that the District Court's computations cannot be accepted, we are unable, in the main, to adopt Babbitt's suggested alternatives; our reasons for so deciding are set forth below.

## I. The Computations in the District Court.

In analyzing the transactions in dispute, the District Court isolated two "deals," or pairings of purchases and sales. Thus, as a first pairing, the Court linked Lachner's March 13, 1959 purchase of 10,000 shares, at the option price of $3.44375, with the sale of 4,600 shares on March 6, 1959, at $8.625. Taking the option price as the "purchase price," the Court computed a per share profit of $5.18125; when this figure was multiplied by 4,600, an aggregate total of $23,833.75 was fixed; and this amount was considered Lachner's short-swing profit on this transaction. Thus:

| | | |
|---|---|---|
| (Sale) | March 6, 1959 .................... | $8.625 |
| (Purchase) | March 13, 1959 ................. | $3.44375 |
| Per share profit ............................ | | $5.18125 |
| | | x 4,600 shares |
| Total profit ............................... | | $23,833.75 |

———◆———

■ Even Babbitt has conceded that the Court erred in taking the option price of $3.44375 as the purchase price for the purpose of computing Lachner's profits. Under Judge Medina's familiar analysis in Steinberg v. Sharpe, 95 F. Supp. 32 (S.D.N.Y.1950), aff'd on the opinion below, 190 F.2d 82 (2d Cir. 1951), this approach is unduly harsh; while § 16(b) was designed to "squeeze out" only short-term profits, the District Court's computation would, in effect, penalize Lachner for the increment in the value of Babbitt's stock over the long pe-

riod from December 16, 1957, when the option was granted by the employment agreement, until March 13, 1959, when it was finally exercised. Instead, the Steinberg formula would require in the present case that the purchase price of stock bought pursuant to an option be considered as equivalent to the fair market value of the stock on the date on which the option was first exercisable. In the present case, this date was December 4, 1958. And since Babbitt common sold on December 4 for $9.3125, the pairing of *this* purchase with a sale at $8.625 obviously results in no recoverable profits.

■ As a second combination, the District Court paired Lachner's conversion of preferred into common—on November 5, 1958—with his sale of 5,749 shares on May 6, 1959. This pairing is clearly improper. Since the interval between the purchase and the sale exceeded six months—if only by one day—any profit which Lachner may have made on the transaction is not recoverable under § 16 (b).

II. *Babbitt's Computations on Appeal.*

As we have indicated, Babbitt itself has conceded the invalidity of the District Court's computations, and has offered alternative pairings of purchases and sales on appeal. We now turn, therefore, to an analysis of the company's computations.

Babbitt's first pairing links Lachner's conversion of preferred into common, on November 5, 1958, with the sale of 4,600 shares on March 6, 1959 at $8.625 per share. While this approach avoids the six-month problem encountered above, and although it is clear that a conversion of preferred into common is a "purchase" within the meaning of § 16(b), Park & Tilford, Inc. v. Schulte, 160 F.2d 984 (2d Cir. 1947), this is of little assistance to Babbitt. For, as was true with one of the District Court's pairings, this transaction yields no recoverable profits.

■ In determining the "purchase price" of the common obtained on the conversion, we must necessarily value the preferred which was surrendered in return. And, unlike the situation in Park & Tilford, supra, the parties have expressly stipulated here that there was no market for the Series "B" Preferred at the time of the conversion. As a result, we find that the District Court was correct in determining that the preferred might only be valued by looking to the market price of the common received in return and into which it was readily convertible. Since the common sold for $8.6875 on November 5, no profits are yielded when this "purchase" is paired with the sale on March 6, 1959 at $8.625.

As a second suggested pairing, Babbitt links the March 13 purchase under the option with the May 6 sale of 5,749 shares at $9.7945. Here, profits clearly *are* realized. Subtracting the purchase price, computed under Steinberg as the value of the stock on the date the option became exercisable, or $9.3125, from the sale price of $9.7945, we arrive at a per share profit of $.482, and an aggregate recoverable amount of $2,771.02. Thus:

| | | |
|---|---|---|
| (Sale) | May 6, 1959 ...................... | $9.7945 |
| (Purchase) | March 13, 1959 .................... | $9.3125 |
| | Per share profit ............................ | $ .482 |
| | | x 5,749 shares |
| | Total profits ............................ | $2,771.02 |

Assuming the accuracy of the above figures, we have thus concluded to modify the judgment below, and to award Babbitt $2,771.02, with interest from May 6, 1959. Admittedly, neither party to the appeal is entirely satisfied with this re-

sult. Asking us to disregard Steinberg, Babbitt contends that a greater sum is properly due; contending that his transactions were exempted from the provisions of § 16(b), Lachner insists that Babbitt is entitled to no recovery at all. We have considered the arguments of both parties and find neither to be persuasive.

■ Babbitt's suggestion that Steinberg be discarded is founded on SEC Rule X–16B–6, which was recently held valid in Kornfeld v. Eaton, 327 F.2d 263 (2d Cir. 1964). By the terms of this rule, the "purchase price" of stock bought pursuant to an option—when the option is acquired more than six months prior to its exercise—is deemed to be "the lowest market price of any security of the same class within 6 months before or after the date of sale." In the present case, this figure is $7.00; if the Rule were applicable here, per share profits would be increased to $2.7945 on Babbitt's second pairing, and total profits would be raised to $17,065.58 instead of the $2,771.02, allowable under Steinberg.

We find it clear, however, that Rule X–16B–6 has no application to the present case. For, as its very wording makes manifest, far from a mechanism to *increase* allowable profits, the Rule was intended to *mitigate* the severity of Steinberg, and to *reduce* the amounts for which Steinberg would hold an insider liable. Thus, X–16B–6 specifically provides that nothing therein contained "shall be deemed to enlarge the amount of profit which would inure to the issuer in the absence of this section." If we were to accept Babbitt's argument and employ the Rule to award five times the profits allowable under Steinberg, we would vitiate its purpose. At least on this side of the Looking-Glass, words cannot be read in this way to mean their opposite.

Lachner's contention that he is not even liable for the sum awarded here is similarly without merit. Thus, he argues that SEC Rule X–16B–3, exempting from the reach of § 16(b) the acquisition of stock pursuant to non-transferable employee options, immunized the transactions in question from all liability. Recognizing that the Rule was declared invalid in Perlman v. Timberlake, 172 F. Supp. 246 (S.D.N.Y.1959), he contends that he was unaware of the Perlman decision, and acted in good faith reliance on the terms of the Rule.

■ While Babbitt does not challenge Lachner's claim that he was ignorant of Perlman, as well as of our decision in Greene v. Dietz, 247 F.2d 689 (2d Cir. 1957), which strongly implied that Rule X–16B–3 was beyond the powers of the commission, this cannot be dispositive here. We have often emphasized that § 16(b) requires no showing of conscious wrong-doing. See, e. g. Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir.), cert. denied, 64 S.Ct. 56, 88 L.Ed. 446, 320 U.S. 751 (1943); Gratz v. Claughton, 187 F.2d 46 (2d Cir.), cert. denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951). And § 23(a) of the Securities Exchange Act, which does protect certain forms of reliance, seems wholly inapplicable to the present case. Thus, that section provides that "[n]o provision of this chapter imposing any liability shall apply to any act done * * * in good faith in conformity with any rule or regulation of the Commission * * * notwithstanding that such rule or regulation may, *after* such act * * * be amended or rescinded or be determined by judicial or other authority to be invalid for any reason." Since Greene v. Dietz was decided in 1957, Perlman expressly held the Rule invalid in March of 1959, and the sale for which Lachner is now held was consummated in May of 1959, our case is not within the exceptive provisions of § 23. Where as here, an SEC Rule is declared invalid *before* a defendant commits the act for which liability is imposed, reliance upon the Rule will not shield him from liability—any more than did the failure actually to use inside information in Smolowe v. Delendo Corp., supra.

The judgment will be modified to provide for damages of $2,771.02, with interest from May 6, 1959, and, as so modified, is affirmed.