Betty VOLK, Plaintiff,

v.

Robert ZLOTOFF, Abraham M. Raboy, Alfred H. Juechter and Yoo-Hoo Chocolate Beverage Corporation, Defendants.

67 CIV. 4076(MP).

United States District Court,
S. D. New York.

April 10, 1970.

Sidney L. Garwin, New York City, for plaintiff.

Martin Ozer, New York City, for defendants Zlotoff, Raboy and Juechter.

Royall, Koegel & Wells, New York City, for defendant Yoo-Hoo Chocolate Beverage Corp.

## DECISION AND OPINION

POLLACK, District Judge.

Summary judgment was granted herein in favor of plaintiff on the issue of liability by Judge William B. Herlands on May 13, 1968 adjudging a violation by the individual defendants of Section 16 (b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Volk v. Zlotoff, 285 F.Supp. 650 (D.C.1968).

On July 23, 1969, Judge Herlands ordered the Calendar Clerk to place this case on the Non-Jury Trial Calendar for a trial to determine the amount of the recovery. The period between May, 1968 and July, 1969 was taken up to a material degree by unsuccessful efforts of the parties to reach an agreement on the recoverable measure of damages. Judge Herlands died on August 28, 1969, and

the case was thereafter re-assigned by Chief Judge Sugarman. When it was reached for trial, the parties agreed that the matter of damages could be submitted on papers and this was done. The submission was thereafter supplemented following conference with the Court.

■ The findings in connection with the summary judgment of liability do not necessarily control the issue of damages. Audi Vision Inc. v. RCA Mfg. Co., 136 F.2d 621, 625 (2d Cir. 1943); Coffman v. Federal Laboratories, 171 F.2d 94, 98 (3d Cir. 1948), cert. denied, 336 U.S. 913, 69 S.Ct. 603, 93 L.Ed. 1076 (1949); 6 J. Moore, Federal Practice ¶ 56.20 [3–4], at 2759–60 (2d ed. 1966).

■■ Under the general rule, "short-swing" profits are computed under Section 16(b) by matching the shares purchased at the lowest price against an equal number of shares sold at the highest price within six months of such purchase. Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). The instant case involves stocks purchased through the exercise of options which were granted in connection with employment contracts. In such a case, "the purchase price of stock bought pursuant to an option [should] be considered as equivalent to the fair market value of the stock on the date on which the option was first exercisable." B. T. Babbitt, Inc. v. Lachner, 332 F.2d 255, 258 (2d Cir. 1964); see Steinberg v. Sharpe, 95 F.Supp. 32 (S.D.N.Y.1950), aff'd per curiam on opinion below, 190 F.2d 82 (2d Cir. 1951).

The employment agreements were authorized by the board of directors of Yoo-Hoo Chocolate Beverage Corporation at a special meeting held on October 28, 1966. Resolutions fixed the respective salaries of the individual defendants, their expense and other allowances and granted them options to purchase the company's common stock for a five year period at market value on November 1, 1966, which was $1.75 per share. Counsel were instructed to draw appropriate agreements to give effect to such resolu-

tions. The board further resolved that all of the options are subject to the approval of the stockholders at the next stockholder meeting. No date for this meeting was fixed.

Agreements of employment made on November 1, 1966, recited the hiring, the term of employment commencing January 1, 1967, the respective obligations of the parties, the salaries and expenses payable and other matters. These agreements in addition provided as further compensation "an option to purchase * * * common stock * * * for a period of five (5) years, commencing January 1, 1967 * * *."

Option agreements were "entered into as of the first day of January, 1967," and these provided that "[t]he term of the option shall be for a period of 3 years *from the date hereof*. [viz., Jan. 1, 1967]. The option may be exercised at any time * * *." (Emphasis supplied.) The same agreements further stated "that any stock issued under this option shall be held for a period of at least three (3) years or until it is registered and certificates shall bear such a legend thereon."

■ The options were by their terms first exercisable on January 1, 1967. The condition in the employment and option agreements that these options exercisable "commencing January 1, 1967" shall be approved by the stockholders of the company did not defer the date. This conclusion follows ineluctably from the unambiguous language of the grant.

The next meeting of stockholders following the November 1, 1966, special meeting of directors, could have been held as early as January 1, 1967, if the management so desired, through the control of the corporation by "insiders", consisting of the directors and officers who granted the options together with the option recipients. There was no requirement that approval be deferred until June 5, 1967, when the annual meeting actually occurred. Moreover, obtaining shareholder approval was a foregone conclusion. The insiders' control

of the proxy machinery added to their personal stockholdings spelled a 50 percent vote or better as a matter of practical corporate experience. Management owned 322,728 shares or 26.2 percent of a total outstanding of 1,229,738 shares. The fact in June, 1967, was that these holdings represented 46.4 percent of the 695,625 shares voted at the meeting, exclusive of proxies obtained through the proxy machinery. And, 96.8 percent of the shares voted at the meeting were represented by management or management proxies.

■■ The theory of damages in Section 16(b) cases is to squeeze out any incentive to manipulate stock, regardless of actual innocent intent, in sales and purchases (or the reverse) of securities within a period of six months or less. Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir.) cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). In the circumstances of this case, since shareholder approval was a controlled formality deferring nothing beyond the choice of the insiders, there existed an obvious opportunity between January 1 and June 5, 1967, for short-term abuse of the market in the company's stock. During this period, in fact, the price of the stock rose from $1.75 a share to $4.125 a share. The existence of such an opportunity reinforces the Court's conclusion in safeguarding the therapeutic purposes of Section 16(b).

The defendants have submitted market quotations indicating that the mean price at which the company's stock was traded on the National Stock Exchange on December 30, 1966, was $1.875; the mean price on January 3, 1967, was $1.75. The market was closed on the intervening days. The Court finds that the fair market value of the security on January 1, 1967, when the options were first exercisable, was $1.75. This figure is the same as the exercise price of the options, so the rules of Steinberg v. Sharpe, 95 F. Supp. 32 (S.D.N.Y.1950), aff'd per curiam on opinion below, 190 F.2d 82 (2d Cir. 1951), and B. T. Babbitt, Inc. v.

Lachner, 332 F.2d 255 (2d Cir. 1964), do not dictate any diminution of damages.

■ However, damages are mitigated in respect of at least one of the matching transactions by the operation of the Commission's Rule 16b–6, 17 C.F.R. § 240.16b–6. See schedules annexed hereto.* The Court holds that the exemption incorporated in Rule 16b–6 and held valid in Kornfeld v. Eaton, 327 F.2d 263 (2d Cir. 1964), is applicable to the purchases herein which were made through "the exercise of an option * * * acquired pursuant to the terms of an employment contract entered into more than six months before its exercise." Subdivision (a). The rule commands that "profits inuring to the issuer shall not exceed the difference between the proceeds of sale and the lowest market price of any security of the same class within six months before or after the date of sale." Subdivision (b). Furthermore, it provides that "[n]othing in this section shall be deemed to enlarge the amount of profit which would inure to the issuer in the absence of this section." *Id.*

■ The brokerage confirmations attached to defendants' papers show the sales proceeds and are appropriately used in the calculation of profit. Using these figures for the sales proceeds, employing the exercise price of the options as the purchase price, and allowing for the exemption mandated by Rule 16b–6, the Court finds that plaintiff is entitled to recover on behalf of the company $64,630.93 from defendant Zlotoff, $44,392.30 from defendant Raboy, and $11,862.82 from defendant Juechter. The schedules hereto annexed show the relevant calculations. Judgments shall be entered in these amounts.

■ There has been no substantial showing of bad faith or other inequitable conduct by the defendants. Accordingly, interest should not be awarded and the same is withheld in the discretion of the Court. Blau v. Lehman, 368 U.S.

403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962).

The foregoing together with the schedules annexed shall constitute the findings of fact and conclusions of law required by Rule 52(a), Fed.R.Civ.P.

Submit judgment accordingly on 2 days notice returnable 7 days from the date of this decision, together with application of plaintiff for allowance of counsel fees and expenses to be fixed and inserted in the judgment in the space to be provided therefor.