**Harry LEWIS, Plaintiff,**

v.

**Sidney J. WELLS, Howard Swernoff, Jac A. Mooney, Munio Podhorzer and the Wolf Corporation, Defendants.**

**No. 69 Civ. 4968.**

United States District Court, S. D. New York.

March 27, 1971.

Morris J. Levy, New York City, for plaintiff.

Mermelstein, Burns & Lesser, New York City, for defendants.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff's motion for summary judgment in this action to recover short-swing profits under section 16(b) of the Securities Exchange Act of 1934 [1] triggered a cross-motion by the defendants for summary judgment dismissing the complaint upon the merits or striking it as sham and false under Rule 11 of the Federal Rules of Civil Procedure.

■ We first consider the defendants' motion under Rule 11, which is based upon an omission in the complaint signed by Morris J. Levy, plaintiff's attorney, of any allegation that prior to commencement of this action the defendant directors had paid to the corporation a substantial part of the claimed profits. The complaint simply alleges that the insiders engaged in the 16(b) proscribed activities "realizing profits therefrom which inured to but have not been recovered by the issuer," and accordingly demanded full recovery of the profits together with interest and counsel fees. The quoted portion is not an accurate statement, since it omits

1. 15 U.S.C. § 78p(b).

matters that should have been included. The complaint is not a model of candor. As will appear, Mr. Levy was fully aware that following his sixty-day demand that the corporation take action for the recovery of the profits and before its expiration the insiders had paid to the corporation 82% of the profits arising out of their transactions in settlement of the claim.[2] The reality of the situation is that the omission to credit these payments is related to the fee requested by plaintiff's attorney, which is geared to recovery of the total profits rather than to the unrecovered balances. While this lack of candor by the attorney should not go by unnoticed, there is no reason to deprive the corporation, for whose benefit the action is brought, of whatever balance, if any, may be found to be due it, which would be the result if the complaint were dismissed under Rule 11.[3] Accordingly, this branch of the motion is denied and we now turn to the merits of the cross-motions for summary judgment.

The issuer for whose benefit this action was commenced is Wolf Corporation, the stock of which was registered with the SEC. On July 23, 1969, Mr. Levy, as attorney for the plaintiff herein, served a formal demand upon the corporation that it institute suit to recover profits realized by the individual defendants herein, directors of the corporation, as a result of their purchases and sales of its stock within less than six months, and he further advised the corporation that unless it instituted suit within sixty days, "and unless I receive due proof that such suit has been instituted or the profits repaid," he would commence suit on behalf of his client. The directors from whom return of profits were sought and the amounts were:

| Howard Swernoff — | $11,000 |
| Sidney J. Wells — | $25,000 |
| Jac Mooney — | $ 7,500 |
| Munio Podhorzer — | $12,500 |
| Abraham A. Rosen — | $ 5,000 |

On August 4, 1969, Milton E. Mermelstein, counsel to the Wolf Corporation, advised Mr. Levy that the matter had been referred to his firm, that an investigation was then in process, and "[i]f you are correct, the corporation will institute suit immediately to recover the proceeds unless the sums are forthwith paid * * *." He also advised plaintiff's attorney that Rosen disputed he had sold any shares, a fact which was soon verified, and is not in dispute. On August 11, Mr. Mermelstein advised he should have "definitive word within the next few days from the balance of the Directors." On August 29, thirty-six days after Mr. Levy's demand upon the corporation, he was advised that payments had been received from all the directors "except Mr. Podhorzer, whose check, I am told, will be received momentarily," and that following Mr. Mermelstein's return from Europe he would be pleased to meet with Mr. Levy and furnish the evidence "that you have requested, at which time I am sure the Podhorzer check will be in our possession." Upon his return from Europe, Mr. Mermelstein advised Mr. Levy on September 19 that the profits had been recovered from the following directors on the dates and in the sums indicated:

| Howard Swernoff | 9/2/69 | $ 7,418.54 |
| Sidney J. Wells | 9/2/69 | 9,135.00 |
| Jac Mooney | 9/2/69 | 12,057.08 |
| Munio Podhorzer | 9/17/69 | 8,643.00 [4] |
| | Totaling | $37,253.62 |

---

2. Plaintiff, based upon his demand for interest and his computation of the balance of profits due, contends that the directors paid only 67⅝% before he commenced this suit. Defendants paid a total of $37,253.62 and plaintiff, upon his computation, claims a balance remains of $17,822.95.

3. Cf. Murchison v. Kirby, 27 F.R.D. 14 (S.D.N.Y.1961).

4. Podhorzer concedes that due to an inadvertent error, he owed an additional $376.18, which he has now paid.

He added that he would be pleased "to meet with you and go over the details on which the settlement was effected."

On September 26, Mr. Levy responded, requesting "figures upon which you made your computations and final determinations of the amounts" owed by the directors, and then went on to discuss what in this court's view this lawsuit is all about—fees. Mr. Levy reminded Mr. Mermelstein of a telephone conversation on this subject on September 24 and stated that where recovery of profits was realized without suit, but after demand had been made upon the issuer by a stockholder's attorney, the "counsel fees which I have received in most of such matters from the issuers involved have been between 20% and 33⅓% of the fund collected," and then cited various cases in which awards had been made to him, concluding, "[f]rom all of the foregoing it would seem that a 20% counsel fee from the fund recovered by the Wolf Corporation is certainly proper and most reasonable under the standards set by the Courts in similar situations." Mr. Mermelstein did not share Mr. Levy's evaluation of the reasonableness of his requested 20% fee, or about $7500; he pointed out the investigating activities of his own firm; that the Wolf Corporation had been made whole because Mermelstein's firm had agreed to waive any fee, and stated that he was prepared to recommend a fee of $2500 to Mr. Levy. Needless to say, the defendants' view that Mr. Levy's demand was exorbitant was the rock upon which the parties' efforts foundered, and so we have this lawsuit. Plaintiff alleges he instituted it after he failed to receive proof of payment or of the computations

with respect thereto, although the record is clear that following receipt of payments from the directors, defense counsel offered to make these available.

The issues presented by the respective motions are as follows:

(1) whether a settlement between a director or other insider of a corporation and the corporation for a substantial sum but less than all the profits recoverable under section 16(b) is a defense to a subsequent derivative action brought by a shareholder to recover the balance;

(2) whether under the circumstances of this case interest should be allowed upon the amounts previously paid to the corporation without suit and also upon the balance of payments, if any, that may be allowed in the action; and

(3) whether plaintiff's attorney is entitled to counsel fees with respect to the amounts recovered by the corporation without suit and also with respect to such amounts, if any, which may be recovered in this suit.

We consider each separately.

■■ 1. The basic purpose of section 16(b) has been stated repeatedly and need not be elaborated upon at length here. It is to deter a director or other insider from taking advantage of his knowledge obtained as a fiduciary. In order to effectuate that congressional purpose, the courts have sought "to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary * * * and the faithful performance of his duty," [5] and accordingly have steadfastly required the insider to disgorge "every possible penny of profit out of such transactions." [6] In the instant case, the

5. Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). *See also* Newmark v. RKO General Inc., 425 F.2d 348, 356 (2d Cir.), cert. denied, 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (1970); Blau v. Lamb, 363 F.2d 507, 515–516 (2d Cir. 1966), cert. denied, 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967).

6. Blau v. Lehman, 286 F.2d 786, 791 (2d Cir. 1960), aff'd, 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962). *See also* Park & Tilford, Inc. v. Schulte, 160 F.2d 984, 988 (2d Cir.), cert. denied, 332 U.S. 761, 68 S.Ct. 64, 92 L.Ed. 347 (1947) (to be consistent with statutory policy, purchase price of common acquired on conversion of

directors, prior to commencement of this suit, had entered into a settlement with the corporation of the claims against them for 82% of the calculated profits. The directors, the defendants herein, and the corporation seek to justify this upon the ground that the corporation has realized the return of the entire profits, since the attorneys for the corporation voluntarily waived any fee for services, estimated at least at 20% of such recovery. However, the statute is concerned with the probity of conduct of the directors, and the cases make it abundantly clear that there can be no compromise with the strict command of the statute—that the directors may not gain advantage as a result of their trust position by retaining profits realized within a six-month period in trading in their corporate securities. To allow a settlement, however well-intentioned,[7] for less than the full amount of the realized profits not only negates congressional purpose to "wring the profit out of short-swing transactions by insiders,"[8] but carries with it the prospect of other abuses. While the good faith of defendant's counsel in waiving their fee in the instant case is not questioned, it is apparent that such action carries the seeds of abuse. It is stating the obvious that where the defendants are directors on whose vote the continued retention of counsel is dependent, a fee that has been waived could readily be made up in other matters in which the corporation is involved.[9] The command of the statute is clear; it should not be hobbled by permitting settlements for less than the amount of the profits. The directors either realized or did not realize the profits within the six-month period—if they did, they must pay these to the corporation, as the statute provides; if they did not, then nothing is owed. With respect to the defendant directors, other than Podhorzer, there is no dispute as to the amount of the profits. Accordingly, judgment may be entered against the defendants Swernoff, Wells and Mooney for the difference between that amount and the sums paid to the corporation.

■■ However, an issue is raised as to the profits realized by Podhorzer. The accepted rule in computing profits in order to assure recovery of all possible profits within the six-months period is "that of lowest price in, highest price out."[10] Podhorzer claims this rule is inapplicable because 2500 of the shares he acquired within the six-months period are unregistered and restricted, and therefore are not fungible with the stock he sold, all of which was registered. He asserts he still has these shares, which he cannot sell without a registration with the SEC or a proper letter of investment intent, and consequently their value is substantially less than the market price for unrestricted stock. While the parties take different positions on how to

---

preferred was value of preferred, not common, at time of conversion); Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943) (adoption of lowest in, highest out, method of computation).

7. There is no claim that any substantial defense upon the merits existed to the right of the corporation to recover the short-swing profits; nor is this a case where a settlement was entered into and notice was sent to all stockholders under the class action rule. Cf. Blau v. Allen, 171 F.Supp. 669 (S.D.N.Y.1959).

8. Shaw v. Dreyfus, 172 F.2d 140, 143 (2d Cir.) (Clark, J., dissenting), cert. denied, 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949).

9. Former Chief Judge Clark of our Court of Appeals has suggested other instances of possible motivation where counsel waive their fees. Shaw v. Dreyfus, 172 F.2d 140, 143 (2d Cir.) (Clark, J., dissenting), cert. denied, 337 U.S. 907, 69 S.Ct. 1048, 93 L.Ed. 1719 (1949).

10. Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943); Gratz v. Claughton, 187 F.2d 46, 50–52 (2d Cir.), cert. denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353 (1951).

measure the profits,[11] in this instance no evidence has been submitted by either side as to the value of the restricted stock, no matter what is determined to be the proper method of computation of profits in the instance of such stock. Accordingly, the motion for summary judgment against the defendant Podhorzer is denied.

■ ■ 2. Allowance of interest is not a matter of routine determination. Its denial or allowance is vested in the court's discretion, to be guided by considerations of fairness and equity.[12] There is nothing about the instant case which, as already noted, has its origin in the question of attorneys' fees that suggests any compelling reason to allow interest. The directors, promptly upon demand by the corporation and within a matter of forty-one days as to three of them and fifty-six days as to the fourth, settled the claims against them. The settlement appears to have been made in the honest belief that it was permissible to compromise the claims. The fact is that plaintiff's attorney was ready to accept the compromise disposition had agreement been reached as to fees claimed by him. That this litigation resulted because of disagreement on that issue does not justify the allowance of interest, and accordingly it is denied.

3. Plaintiff's attorney seeks allowance of fees for services allegedly rendered prior to the service of the demand upon the corporation,[13] and also for services rendered in connection with this action to recover the balance of profits,[14] which, as already noted, the court has granted in the instance of three directors. However, Mr. Levy's affidavit furnishes little information as to the extent and nature of his services. Thus, he states that he "performed numerous miscellaneous services in connection with this matter, i. e., telephone conversations with defendants' counsel and the plaintiff, letters written, stipulations entered into between counsel and other details required in the course of litigation which, although time consuming, do not lend themselves to precise exposition." In this court's view, there must be some relevant statement of the services rendered and the time allegedly spent in connection therewith, both as to the claim prior to the institution of suit, as well as in connection with this suit. Surely daily registers are still maintained in law offices.[15]

The testimony of Mr. Levy as to the services for which he claims compensation will be taken on a day to be fixed in the order to be entered in accordance with this disposition.

11. Podhorzer concedes liability, but contends that he should be permitted to match the purchase of the 2500 unregistered stock with the first 2500 shares of registered stock sold, rather than those sold at the highest prices within the period. He cites no cases directly supporting this method. Plaintiff's papers do not address themselves to this point.

12. *Cf.* Blau v. Lehman, 368 U.S. 403, 413, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962); Blau v. Lamb, 363 F.2d 507, 528 (2d Cir. 1966), cert. denied, 385 U.S. 1002, 87 S.Ct. 707, 17 L.Ed.2d 542 (1967).

13. Blau v. Rayette-Faberge, Inc., 389 F.2d 469, 472, 474 (2d Cir. 1968); Gilson v. Chock Full O'Nuts Corp., 331 F.2d 107 (2d Cir. 1964); Dottenheim v. Emerson Elec. Mfg. Co., 7 F.R.D. 195 (E.D.N.Y. 1947).

14. Blau v. Rayette-Faberge, Inc., 389 F.2d 469, 472 (2d Cir. 1968); Smolowe v. Delendo Corp., 136 F.2d 231, 241 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

15. American Safety Table Co. v. Schreiber, 415 F.2d 373, 380 n. 13 (2d Cir. 1969), cert. denied, 396 U.S. 1038, 90 S.Ct. 683, 24 L.Ed.2d 682 (1970); In re Wal-Feld Co., 345 F.2d 676 (2d Cir. 1965); In re Hudson & Manhattan R. R., 339 F.2d 114, 115 (2d Cir. 1964).