**Harry LEWIS, Plaintiff,**

v.

**James P. ARCARA and Capital Cities Communications, Inc., Defendants.**

**No. 74 Civil 4627.**

United States District Court,
S. D. New York.

July 18, 1975.

---

**450**

Morris J. Levy, New York City, for plaintiff.

Hall, Dickler, Lawler, Kent & Howley, New York City, for defendants; Milford Fenster, Paul G. Whitby, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are cross-motions for summary judgment in an action instituted by plaintiff, a shareholder in defendant Capital Cities Communications, Inc. ("Capital Cities"), pursuant to section 16(b) of the Securities Exchange Act of 1934 [1] to recover on behalf of Capital Cities, the issuer, short swing profits realized by defendant James P. Arcara, a vice president of Capital Cities.

---

1. 15 U.S.C. § 78p(b).

The parties are in agreement that the matter is ripe for summary judgment. The issue here presented is unique in "short swing" profit cases and is one of novel impression. There is no dispute that defendant Arcara violated section 16(b), that he realized profits in the sum of $20,141.68 from the sale and purchase of Capital Cities common stock within six months,[2] and that defendant Capital Cities is entitled to recover the full amount of this profit.

Within days of its discovery of the transactions and more than a year before the commencement of this suit, Capital Cities, upon its own initiative, notified Arcara that he had run afoul of section 16(b). Thereafter, on September 14, 1973, Capital Cities approved a settlement agreement by accepting Arcara's promissory note of $21,048, representing the total profits on his transactions together with accrued interest from the date of the violation, payable over a five-year period in 130 bi-weekly installments, with interest. When plaintiff (who did not acquire his shares until August 1974) commenced this action in October 1974, Arcara had made and continues to make the payments under his note.

 The issue is whether, upon the facts presented, the acceptance of the five-year installment note covering the amount of Arcara's profit, together with interest at the statutory rate of six per cent[3] from the date of violation, satisfied Capital Cities' statutory duty under section 16(b). Stating it another way,

was Capital Cities obligated to demand and receive the immediate return in cash of the short swing profits from Arcara, and upon his failure to comply, was it required to take appropriate action for its recovery?

 The court is of the view that despite defendants' demonstrable good faith in settlement of the claim against Arcara,[4] the potential for abuse in such arrangements and the need to assure rigid enforcement of section 16(b) to assure its salutary purposes require that judgment be entered against the defendant Arcara for the immediate return of the profits realized. The court concludes that the installment payment arrangement does not satisfy the statutory command.

The facts may be briefly stated. Arcara has been employed by Capital Cities since 1961 and is the manager of radio station WPAT, one of its divisions. Arcara was elected a vice president of Capital Cities pursuant to its policy of naming all division managers to that office.

In December 1967 Arcara was granted a stock option. On October 23, 1972, he sold 2000 shares of Capital Cities common stock. Within six months of this sale, on December 15, 1972, he acquired 2000 shares of Capital Cities common stock by exercising his option. The transactions clearly constituted a violation of section 16(b) since he was an officer of Capital Cities, nominal or otherwise. The matter came to the attention of Capital Cities in February

---

2. The profits were calculated in accordance with Rule 16b–6, 17 C.F.R. § 240.16b–6 (1974).

3. N.Y.C.P.L.R. § 5004 (McKinney 1963).

4. As noted, the settlement, in addition to recovering the full amount of the realized profits, included interest from the date of violation even though the award of prejudgment interest in a § 16(b) suit is not mandatory but within the discretion of the court. Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962); Occidental Life Ins. Co. v. Pat Ryan & Assoc., Inc., 496 F.2d 1255, 1268–69 (4th Cir. 1974), cert. de-

nied, 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1975); Gold v. Sloan, 486 F.2d 340, 353 (4th Cir. 1973), cert. denied, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1975); Western Auto Supply Co. v. Gamble-Skogmo, Inc., 348 F.2d 736, 744 (8th Cir. 1965), cert. denied, 382 U.S. 987, 86 S.Ct. 556, 15 L.Ed.2d 475 (1966). Courts frequently do not award prejudgment interest where it appears, as it does here, that there has been an innocent or unintentional violation of the statute. See, e. g., Lewis v. Wells, 325 F.Supp. 382 (S.D.N.Y.1971); Volk v. Zlotoff, 318 F.Supp. 864, 867 (S.D.N.Y.1970).

1973 and Arcara was promptly notified of the infraction. He contended he was unaware that he was subject to the restrictions of section 16(b) since he had no access to any inside information of Capital Cities except information directly relating to the WPAT division. However, he accepted Capital Cities counsel's determination that the statute had been breached, but professed a lack of cash on hand to make immediate payment. Considering Arcara a valuable employee, Capital Cities agreed to the five-year promissory note settlement as being "in the best interest of the corporation." The defendants urge that the payments Arcara has made to date and will continue to make until maturity of the note represent 100 per cent of the recoverable profits plus interest thereon. Thus they contend that the shareholders' interests have been protected and that Capital Cities has fulfilled its obligation under section 16(b).

While, as a practical matter, the situation is appealing and defendants' legal argument has a surface plausibility particularly since their good faith in entering into the settlement is not questioned, their position that the statute has been complied with cannot be accepted—to do so would open the door to potential abuses. In terms of employer-employee relationships, an accommodation by way of deferred payments may be preferable to insistence upon an immediate disgorging of the short swing profits. But we deal with a statute of inexorable command and must assure that its prophylactic purpose is not thwarted. As the Supreme Court has noted, "the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great."[5]

With the exception of unorthodox transactions not clearly within the reach of the statute which require judicial inquiry to determine whether the opportunity for speculative abuse exists,[6] section 16(b) is to be objectively and automatically applied to prevent the evils that concerned Congress. It deprives directors and officers of "short swing" profits in trading in securities of their corporations regardless of motive and intent and without concern for the opportunity for the use of inside information.[7] The history of section 16(b) shows that Congress intended Draconian enforcement to avoid any loopholes. Congress wrote section 16(b) so that in cases such as this the liability of the insider would not be subject to disputation and thus the law would have its intended prophylactic effect.[8] As one commentator notes: "Since the elements of the action are so simple, the defendant is apt to find that he has no practicable alternative but to pay up."[9] Though Arcara has admitted his liability, he has not completely paid up. Forbearance over a five-year period in the collection of the amount due does not satisfy the statutory mandate. Capital Cities' position that Arcara as a valued employee was "entitled to . . . the opportunity of the installment payment" does not square with the statute.

The court is unpersuaded that to have required Arcara immediately to yield in cash the profits from his transactions would have imposed a substan-

5. Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L. Ed.2d 575 (1972).

6. Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 591–95, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973) ; American Standard, Inc. v. Crane Co., 510 F.2d 1043, 1053–55 (2d Cir. 1974).

7. Reliance Elec. Co. v. Emerson Elec. Co., 404 U.S. 418, 422, 92 S.Ct. 596, 30 L.Ed.2d

575 (1972) ; Perine v. William Norton & Co., 509 F.2d 114, 117–18 (2d Cir. 1974) ; Lewis v. Varnes, 505 F.2d 785, 787–88 (2d Cir. 1974) ; Schur v. Salzman, 365 F.Supp. 725, 728 (S.D.N.Y.1973).

8. Blau v. Lehman, 368 U.S. 403, 414, 82 S. Ct. 451, 7 L.Ed.2d 403 (1962).

9. II L. Loss, Securities Regulation 1043 (1961).

tial hardship upon him. Capital Cities' understandable desire to accommodate a valued employee cannot be allowed to dilute the mandate of section 16(b) that profits made in violation of the law inure to the issuer. Such an accommodation in the unexceptional circumstances of this case not only runs counter to the intended automatic application of the statute to recapture "any profit realized," but also affords the opportunity to evade its purpose. Section 16(b) requires a corporation, in the first instance, to demand and receive the proscribed profits from its officers and directors, and since the corporation acts through its officers and directors, they are the individuals who must demand of their colleagues that they disgorge profits resulting from such illegal insider trading. Were this form of deferred compliance with the statute sanctioned, it would carry with it the means of diluting the force and evading the purpose of the statute; it would encourage corporations to forego the customary demand for immediate payment of insider profits and would invite abuses. It would open Pandora's Box for new litigation in this field over such questions as the adequacy of the interest rate (an item raised in this litigation), the permissible time period for the extended payments and whether in any particular situation an extension was warranted, to mention but a few matters of potential controversy. This court has previously held that the strict command of the statute prohibits a settlement, however well-intentioned, for less than the full amount of the profits,[10] and that an insider must pay interest for holding on to profits for an inordinate period by raising frivolous defenses to asserted liability.[11] Given the potential for abuse in section 16(b)'s self-enforcement mechanism, the statutory policy is best served by a rigid insistence that "any profits realized" be disgorged immediately.

It may be that exceptional circumstances such as existing garnishment, imminent insolvency, potential bankruptcy, or a judgment proof officer or director may allow for an extended payment arrangement, but this is not such a case. Arcara's salary is substantial; the transactions at issue were substantial; the profits were substantial. Moreover, in the instance of stock options SEC Rule 16b–6 has softened the impact of the statute's usual requirement that profits be computed as the difference between "the highest price out and the lowest in."[12] The Rule, applicable in cases such as this where the "purchase" is made by the exercise of a stock option, compels the insider to disgorge the short swing profits to the corporation, but permits him to retain the portion attributable to the long term increase in the value of the security by limiting recoverable profits to the difference between the sale price and the lowest *market* price within six months of the sale, rather than the *exercise* price of the stock option.[13] Thus the short swing profit of $20,141.68 to which Capital Cities was entitled was little more than one fourth of the gain realizable upon Arcara's exercise of his option at $22.75 per share when the fair market value of the stock at the date of exercise was $61.375.

Arcara is not being penalized; he is being required to comply with the law. There is no legal or equitable reason to excuse non-compliance with the command of the statute.

10. Lewis v. Wells, 325 F.Supp. 382, 386 (S. D.N.Y.1971).

11. Schur v. Salzman, 365 F.Supp. 725, 735 (S.D.N.Y.1973).

12. Gratz v. Claughton, 187 F.2d 46, 50–52 (2d Cir.), cert. denied, 341 U.S. 920, 71 S. Ct. 741, 95 L.Ed. 1353 (1951); Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

13. Kornfeld v. Eaton, 217 F.Supp. 671, 676 (S.D.N.Y.1963), aff'd, 327 F.2d 263 (2d Cir. 1964). See also B. T. Babbitt, Inc. v. Lachner, 332 F.2d 255, 259 (2d Cir. 1964).

Judgment may be entered against defendant Arcara in favor of Capital Cities for the amount of profit still owing after crediting Arcara with payments made to date under the terms of settlement.