David COLAN, Plaintiff,

v.

BRUNSWICK CORPORATION, et al., Defendants.

No. 82 C 3093.

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1982.

David Colan, pro se.

Jerold S. Solovy, Ronald L. Marmer, Jenner & Block, Chicago, Ill., for defendant Gulf & Western Industries.

Leo Herzel, Mayer, Brown & Platt, Chicago, Ill., for defendant Brunswick.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Brunswick Corporation ("Brunswick") stockholder David Colan ("Colan") sues Brunswick and Gulf & Western Industries, Inc. ("Gulf & Western") in a stockholder derivative action under Securities Exchange Act of 1934 § 16(b), 15 U.S.C. § 78p(b). Because it claims it derived no short-swing profits from its sale of the Brunswick common stock referred to in the Complaint, Gulf & Western has moved for summary judgment. For the reasons sketched out briefly below—but at greater length in the

persuasive memorandum submitted by Gulf & Western—the motion is granted.

### FACTS[1]

Gulf & Western was, during the relevant six-month period, the holder of over 10% of Brunswick's common stock. Part of those holdings were 110,000 shares acquired through open market purchases September 3, 4 and 8, 1981. On February 25, 1982 Gulf & Western tendered its more than 3 million Brunswick shares (including the 110,000 shares in issue) to American Home Products Corporation ("American Home") in response to American Home's "friendly" tender offer for Brunswick stock.

Gulf & Western's tender was of course made in accordance with the terms of American Home's offer and applicable federal law. Both the offer and the federal securities law (17 C.F.R. § 240.14d–7) gave Gulf & Western the right to withdraw its shares after tender—in this case, until midnight (New York City time) March 8.[2] Thus American Home could *not* purchase any tendered shares until March 9.

Moreover, the tender offer itself permitted American Home to terminate its offer if:

consummation of the Offer shall be restrained or enjoined or the Purchaser [American Home] shall be restrained or enjoined from acquiring, or the Company [Brunswick] shall be restrained or enjoined from transferring to the Purchaser, the Medical Group [of Brunswick]. . . .

That provision was not mere boilerplate. There was a very real possibility American Home would be enjoined or otherwise prevented from buying Brunswick's shares. Rival suitor Whittaker Corporation ("Whittaker") had begun the bidding with its own January 26 tender offer for over 10 million Brunswick shares. American Home entered the picture as a "white knight" located by Brunswick's investment bankers to counter Whittaker's hostile tender. Then a power struggle ensued.

---

1. Colan has agreed there is no genuine issue of fact ("Plaintiff accepts the statement of facts set forth in Defendant's Memorandum . . .," Colan Mem. 3). Colan's supplementation of

facts (Colan Mem. 3–4) does not change the result in any respect. See n. 6.

2. All dates without any year designation are 1982 dates.

As a rejected suitor, Whittaker filed suit in this District Court. From February 8 to February 22 Judge Flaum (to whom the case was assigned) conducted an evidentiary hearing to resolve the Whittaker-Brunswick disputes. On February 25 Judge Flaum refused to issue a preliminary injunction against American Home's tender offer. Next day Whittaker filed an emergency appeal. On March 5 the Court of Appeals affirmed Judge Flaum, and on March 8 Whittaker announced it would not continue litigation to thwart the American Home tender offer. That brief but intense court battle was marked by major expenditures of time and energy by some of the country's largest law firms on each side, with the outcome not certain to the very end.

Throughout the February 25—March 9 period Gulf & Western retained its contractual right to withdraw its shares.[3] On March 9 its commitment to the tender became firm, and a pro rata portion of its shares (something under 2 million) was purchased by American Home.[4]

## DATE OF THE "SALE" FOR SECTION 16(b) PURPOSES

Whether or not Gulf & Western's profit realized on its sale of the 110,000 shares to American Home was short-swing—and thus repayable to Brunswick under Section 16(b) —depends on the date of that sale. If the critical date were that of the February 25 tender, the sale took place within the statute's six-month period (within six months of September 3, 4 and 8). But if the determinative date were March 9, when American Home was first able to and did purchase the shares, the transaction would be outside Section 16(b)'s six-month period. Gulf & Western would not be liable to Brunswick.[5]

Logic and law compel the latter result. *Portnoy v. Revlon, Inc.,* 650 F.2d 895, 898 (7th Cir.1981) teaches that under Section 16(b) the date of sale is the date on which the selling shareholder:

> became so irrevocably bound to dispose of his securities so that his rights and obligations became fixed and the opportunity for speculative abuse was removed.

Application of *Portnoy* to this case is easy. On the undisputed facts Gulf & Western could have withdrawn its tender until midnight March 8.[6] Only thereafter— on March 9—could American Home exercise its right to purchase. That alone means no Section 16(b) "sale" occurred until March 9, for only then did the parties' "rights and

3. Colan's Memorandum glosses over (more accurately, wholly ignores) that right. But in the world of corporate finance that right too is very real. Indeed Gulf & Western's own treatment of its Brunswick investment demonstrates that dramatically. It had originally tendered its shares to Whittaker, on February 4, under like conditions. When American Home came along and upped the ante, Gulf & Western withdrew the shares from the Whittaker tender and, on February 25, tendered them again, this time to American Home. It is not at all unusual for an attractive target to generate several successive escalating bids, often from more than two competing offerors. To the tendering stockholder the situation can only improve, and the stockholder's ability to withdraw from a tender can of course be taken advantage of more than once and right up to the last minute.

4. Pro ration was required because American Home's tender offer had been oversubscribed.

5. Of course the corporate parties were very much aware of Section 16(b). Gulf & Western had bought another 329,000 Brunswick shares between September 11, 1981 and January 5, 1982—within six months of the date of sale under any theory. Brunswick promptly made a demand on Gulf & Western for recoupment of short-swing profits under Section 16(b). After negotiations among outside counsel for both parties, repayment of nearly $3.75 million was agreed upon. Gulf & Western delivered a check for the agreed amount to Brunswick March 15.

6. Colan contends the February 25 Gulf & Western "Letter of Transmittal" to American Home constituted a "sale" because American Home officers and directors were "granted irrevocably the attorneys and proxies of Gulf & Western with full power of substitution." That argument is disingenuous. By the express terms of the Letter of Transmittal the proxy extended to "all of the shares that are being tendered hereby *that are purchased pursuant to the Offer* ...." (emphasis added). *Its use of the present tense ("hereby") in referring both to the sale and the proxy is plainly conditional on the purchase,* which became a reality March 9. Thus the analysis in the text is unaffected by Colan's selective and misleading emphasis of only a part of the documentation.

52

obligations bec[o]me fixed." And American Home's potential right to pull back its offer under conditions that did not become definitively eliminated until March 8, when Whittaker chose to throw in the towel because of an adverse litigation result, simply buttresses this conclusion.

## CONCLUSION

There is no genuine issue of material fact. No "sale" within Section 16(b) took place until March 9. Gulf & Western is not liable to Brunswick for the profit realized on the 110,000 shares [7] and is therefore entitled to a judgment as a matter of law. Its motion for summary judgment is granted. Because (as is typical in stockholder derivative suits) no relief is sought against co-defendant Brunswick, this action is dismissed in its entirety.

---

**7.** For that reason this Court need not consider whether *if* Section 16(b) liability had existed for such shares, the March 15 agreement between Gulf & Western and Brunswick would have extinguished it. See such cases as *Lewis v. Wells,* 325 F.Supp. 382, 386 (S.D.N.Y.1971).