**Harry LEWIS, Plaintiff-Appellant,**

**v.**

**George L. VARNES, Defendant-Appellee,**

**and**

**Eli Lilly and Company, Defendant.**

**No. 65, Docket 74-1293.**

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1974.

Decided Oct. 30, 1974.

Morris J. Levy, New York City, for plaintiff-appellant.

Merton Sarnoff, New York City (Shaw, Bernstein, Scheuer, Boyden & Sarnoff, New York City, on the brief), for defendant-appellee George L. Varnes.

L. Robert Fullem, New York City (Dewey, Ballantine, Bushby, Palmer & Wood, New York City, on the brief), for Eli Lilly and Co.

Before HAYS, ANDERSON and MANSFIELD, Circuit Judges.

ROBERT P. ANDERSON, Circuit Judge:

George L. Varnes, appellee, was for several years a director and officer of Eli Lilly and Company (Lilly); on January 31, 1971, he retired from these positions. It is undisputed that he has maintained no significant contact with Lilly since that date.

Prior to his retirement, Lilly had granted Varnes various options to purchase its common stock at stated per share prices, but, under the terms of the agreements, the right to exercise the options expired two months after Varnes' retirement. On December 22, 1970, Varnes, exercising some of the options, purchased 1,600 shares of Lilly common stock. He used the remaining options after his retirement, but within six months of his pre-retirement (December 22nd) acquisitions. Between February 2, 1971 and March 26, 1971, he purchased a total of 21,400 shares of Lilly common stock at option prices which ranged between $30.50 and $65.25 a share below the prevailing market.

Varnes solicited and received on various occasions, both before and after his retirement, legal advice from his personal counsel and from Lilly's general counsel concerning the applicability of § 16(b) of the Securities Exchange Act of 1934, 48 Stat. 896, 15 U.S.C. § 78p(b), to stock transactions by a retired officer-director. The consensus of counsel, based in large part upon Feder v. Martin Marietta Corp., 406 F.2d 260 (2 Cir. 1969), was that profits could be recovered from a retired 'insider' only if a purchase or sale took place within six months of a matching pre-retirement transaction. Because Varnes, while an active officer-director, had last exercised his stock options on December 22, 1970, counsel advised him that any impediment under § 16(b) to a sale by him of Lilly stock would expire six months thereafter, i. e. June 22, 1971.

On July 6, 1971—more than six months after his last purchase of Lilly stock while an active employee of that company, but less than six months after his retirement and within six months of his last stock acquisitions at option prices—Varnes sold 6,300 shares of Lilly stock. The total net proceeds of such sale were $781,631.29; the difference between the net proceeds and the actual acquisition cost of the shares in question amounted to $499,706.29.

The appellant, Harry Lewis, a Lilly stockholder, requested that the company institute an action to recover the profits realized by Varnes, but it refused to do so. Lewis then filed a complaint in the district court seeking recovery under § 16(b) for the profits made by Varnes on the July 6th sale.

Varnes moved for summary judgment, which the district court granted. It held that § 16(b) does not apply where both the purchase and sale within six months of each other occur after an officer has left the employ of the issuer. Lewis has appealed and the question before this court is whether, on the facts of this case, the profits derived from the post-retirement short-swing transaction are recoverable under § 16(b) on behalf of the corporation. We hold that they are not.

Section 16(b) provides, inter alia, that the profits realized from a purchase and sale of a firm's securities within any six month period by a director or officer of the issuer are recoverable on behalf of the corporation. It imposes liability for profits realized by a director or officer from a matching purchase and sale of corporate securities completed within a six month period regardless of motive or intent and regardless of the presence or absence of any improper use of inside information. See, Bershad v. McDonough, 428 F.2d 693, 696 (7 Cir. 1970). It is an objective rule and does not reach every transaction in which an investor actually relies on inside information, or in which the potential for such reliance is great. Unlike other provisions of the Act, the most noteworthy being § 10(b), 15 U.S.C. § 78j(b), Congress drafted §

16(b) with limited areas of clear and unambiguous liability in order to create a "prophylactic" effect. Blau v. Lehman, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed. 2d 403 (1962). See Smolowe v. Delendo Corp., 136 F.2d 231, 235 (2 Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943). Liability cannot be imposed, therefore, solely because the officer or director structured his transaction to avoid § 16(b) liability, provided the method used conforms to the statute. Reliance Electric Co. v. Emerson Electric Co., 404 U.S. 418, 422, 92 S.Ct. 596, 30 L.Ed.2d 575 (1972).

■ Section 16(b) is applicable to any short-swing transaction effected by an individual who must disclose his stock transactions under the provisions of § 16(a) of the Act. For the purposes of § 16(b), therefore, an "insider" is one who is required to report his transactions under § 16(a). Subsection 16(a) requires any beneficial owner of more than 10% of any class of certain described equity securities, or a director or an officer to file with the Securities Exchange Commission a statement setting forth the extent of his equity interest within ten days of his reaching that status or assuming such office and also, thereafter, within ten days of the close of each calendar month within which there has been a change in such ownership. In Federal v. Martin Marietta Corp., *supra*, this court extended § 16(b) liability to the purchase and sale by a director of the issuer's securities within a six-month period spanning his retirement, where the purchase occurred while he was a director and the sale after his retirement. In response to this decision the Securities and Exchange Commission adopted Rule 16a–1(e) which requires a retired director or officer to report any change in his ownership of an equity interest in the issuer that occurs within six months after a pre-retirement change in his beneficial ownership of such securities.

While appellant is correct in arguing that the § 16(a) disclosure requirements applied to Varnes' post-retirement acquisition of 21,000 shares, because such purchase effected a change in his beneficial ownership of Lilly common stock within six months of his purchase on December 22, 1970, § 16(a), as extended in Commission Rule 16a–1(e), "does not specifically require" Varnes to report his July 6, 1971 sales, because no change in his ownership interest was effected within six months of his pre-retirement purchase. In light of the fact that § 16(b) parallels the § 16(a) disclosure requirement, such post-retirement sales were not "specifically" subject to the profit forfeiture provision either.

The district court decision, therefore, is clearly in line with the literal terms of the statute. Appellant seeks a reversal of the judgment, however, on the ground that the purpose of § 16(b) can only be effectuated if the appellee is forced to forfeit the profit from the July 6th sale; the reason for this, he asserts, is that the same danger of unfair use of information inheres in the present situation where the short-swing transaction took place within six months of retirement, as arises in similar pre-retirement transactions, because inside information does not "evaporate" from the mind of the insider.

It is true, as this court noted in Feder v. Martin Marietta Corp., *supra*, that "the judicial tendency, especially in this circuit, has been to interpret Section 16(b) in ways that are most consistent with the legislative purpose, even departing where necessary from the literal statutory language." 406 F.2d at 262. Thus, the policy considerations which are presumed to underlie § 16(b) have guided this court and others in determining whether the profit forfeiture provision extends to a purchase and sale within a six month period which spans the director's retirement, Feder v. Martin Marietta Corp., *supra*, and in determining whether an exchange of stock pursuant to a corporate merger constitutes a "sale," Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); Champion Home Builders Co.

v. Jeffress, 490 F.2d 611 (6 Cir. 1974); Gold v. Sloan, 486 F.2d 340 (4 Cir. 1973).

█ The courts, however, are free to adopt such a flexible approach in construing § 16(b) only in those cases where the relevant provision is either intrinsically ambiguous or in which there are alternative plausible applications of the provision to a particular factual situation. Kern County Land Co. v. Occidental Petroleum Corp., *supra*, 411 U.S. at 594, 93 S.Ct. 1736.

The Supreme Court in Reliance Electric Co. v. Emerson Electric Co., *supra*, refused to extend § 16(a) liability to the profits realized on a sale by an individual who owned 9.96% of a corporation's stock, even though there was evidence that the defendant had in fact traded on the basis of inside information and that he had reduced his holdings below the 10% level for the specific purpose of avoiding § 16(b) liability. The statute clearly defined an "insider" as someone who owned more than 10% "both at the time of the purchase and sale." The Court said, "Liability cannot be imposed simply because the investor structured his transaction with the intent of avoiding liability under § 16(b). The question is, rather, whether the method used to 'avoid' liability is one permitted by the statute." As applied to the present case, this question must be answered in the affirmative. It is true that the statute does not expressly preclude from its application such a case and the policy arguments by the plaintiff-appellant are consistent with the general and laudatory purpose of eliminating the evils of insider trading in a company's securities. But Congress evidently was of the opinion that the most effective means of achieving this end was through "a relatively arbitrary rule capable of easy administration," Bershad v. McDonough, 428 F.2d 693, 696. In *Reliance Electric Co., supra,* just before quoting *Bershad*, 404 U.S. p. 422, 92 S.Ct. p. 599, the Court said " . . . the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions. . . ." For the courts to use a flexible approach to the cases arising under it and, in effect, to bring within the scope of the statute, persons whose actions do not fit squarely and literally within its terms, would actually contravene the congressional purpose and imply ambiguities in the statute which do not exist.

██ Section 16(b), in referring to purchases or sales by directors or officers, clearly relates to transactions in which at least one end (the purchase or sale) occurred while the director or officer held office. The fact that this case involves an implementing Rule of the Securities and Exchange Commission as well as the statute itself does not alter or modify this requirement. The reporting requirements of Rule 16a–1 (e) serve to bring clearly within the statute sales by former officers and directors of stock which they acquired during the time they held office, and the Rule does not violate the intendment of the Act, cf. Feder v. Martin Marietta Corp., *supra*, 406 F.2d at 267–269. That Rule 16a–1(e) also requires reporting of stock purchases occurring after retirement but within six months of a former director's last pre-retirement transaction does not, however, provide a basis for extending § 16(b) to transactions both ends of which occur after the termination of a person's officership or directorship.

This statute is not ambiguous and we are bound to apply its terms literally. Because Varnes was neither an officer nor director during the short-swing transaction in question and he did not effect the sale of stock within six months of a purchase which was made while he was an officer or director, we conclude that § 16(b) does not apply to Varnes' sale of Eli Lilly & Company stock on July 6, 1971.

The judgment of the district court is affirmed.