Macauley **WHITING,**
Plaintiff-Appellant,

v.

The **DOW CHEMICAL COMPANY,**
Defendant-Appellee.

No. 1025, Docket 75–7106.

United States Court of Appeals,
Second Circuit.

Argued June 17, 1975.

Decided Sept. 22, 1975.

---

Russel H. Beatie, Jr., New York City (Dewey, Ballantine, Bushby, Palmer & Wood and Brendan P. Bovaird, New York City, of counsel), for plaintiff-appellant.

Arthur F. Mathews, Washington, D. C. (Wilmer, Cutler & Pickering and Stephen F. Black, Washington, D. C., and Paul R. Grand and Poletti Friedin Prashker Feldman & Gartner, New York City, of counsel), for defendant-appellee.

Before GIBBONS,* GURFEIN and MESKILL, Circuit Judges.

GURFEIN, Circuit Judge:

This appeal presents a difficult and important question of first impression in this court concerning the interpretation of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), as it applies to the matching transactions of a corporate insider and his spouse. The issue is whether a corporate director may be held to have "realized profit" within the meaning of § 16(b) as a result of a matching of his wife's sales and his own

* Of the U.S. Court of Appeals for the Third Circuit, sitting by designation.

purchase of his company's securities within the statutory six-month period.[1]

In a thorough opinion after a non-jury trial, Judge Ward dismissed the complaint of Macauley Whiting, a director of Dow Chemical Company ("Dow"), which sought a declaratory judgment that he was not liable to Dow under § 16(b) and awarded judgment to Dow on its counterclaim for the profits realized. 386 F.Supp. 1130 (S.D.N.Y.1974). We affirm.

I

Helen Dow Whiting sold an aggregate of 29,770 shares of Dow stock for $1.6 million during September and November of 1973 at an average price of $55–$56. In December 1973 her husband, appellant Macauley Whiting, exercised an option to purchase 21,420 Dow shares for $520,-000 at a price of $24.3125. He exercised the option with funds he borrowed from his wife, which were part of the proceeds of her sales of the Dow stock in the preceding two months.

Macauley Whiting has been a director of Dow since 1959. His wife of thirty years is a granddaughter of the founder of Dow, and acquired substantial amounts of Dow stock over the years by gift and inheritance, and these assets are segregated from appellant's. On the other hand, Judge Ward found that "the resources of both husband and wife are significantly directed toward their common prosperity, and they easily communicate concerning matters which relate to that prosperity." Moreover, the Whitings' separate accounts are managed by the same financial advisors. The Whitings file joint tax returns, and their common financial planning has included Mrs. Whiting's use of her husband's annual gift tax exclusion to make charitable gifts and gifts to trusts established for their six children.

Mrs. Whiting's personal wealth and income—primarily consisting of dividends and capital gains derived from her Dow holdings—is considerably larger than that of her husband. Although Judge Ward found that Mr. Whiting contributes virtually his entire salary toward family expenses, he also found that Mrs. Whiting is primarily responsible for the considerable costs incurred in the style of living the Whitings have chosen to pursue. It is her dividend income, for example, which has provided for education of the Whitings' children, which defrays medical expenses, which maintains a family vacation home, and which pays real estate taxes on the Whitings' property.

Mrs. Whiting's sales of the Dow stock in September and November of 1973 were made pursuant to a long-term investment plan, arranged by the Whitings and their financial advisor, which was designed to diversify the holdings of the family and to obtain tax benefits. The court found that the Whitings discussed the general philosophy to govern the management of Mrs. Whiting's estate, and, in early 1972, agreed on a major shift in their philosophy. They then discharged their long-time investment advisor. Desiring to pursue a more aggressive investment program, the Whitings in late 1972 retained new investment counselors, Smith, Barney & Company, Inc. ("Smith Barney"), and new tax, accounting and estate planning advisors, Goldstein, Golub, Kessler & Company

1. Securities Exchange Act § 16(b), 15 U.S.C. § 78p(b), provides, in pertinent part:

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months."

("Goldstein"). As had been the case with their previous financial advisor, the Whitings continued to maintain formal segregation of their investment accounts, but these accounts were managed jointly as discretionary accounts under the supervision of one person at Smith Barney.

Since January 1966, in the Form 3 and 4 reports he was required to make as a Dow director pursuant to § 16(a),[2] Mr. Whiting regularly reported his wife's Dow stock as "directly owned" by him, and never disclaimed ownership as he might have pursuant to SEC regulations,[3] a procedure of which he was made aware by Dow's counsel. Under SEC Rule 144(a)(2)(i), 17 C.F.R. § 230.144(a)(2)(i), effective April 15, 1972, Mrs. Whiting as a "relative or spouse" was herself required to report her sales of Dow stock. From the outset Smith Barney advised the Whitings that it considered Mrs. Whiting to be a "control" person of Dow by reason of Mr. Whiting's position as a Dow director. The Whitings acquiesced in such treatment, and Mrs. Whiting, thereafter, regularly filed Form 144 reports with the SEC covering *her* sales of Dow stock.[4]

Judge Ward found that not only did Mr. and Mrs. Whiting use the same financial advisors, but both were present at many meetings with these advisors; they had a "general philosophy" concerning the management of the family estates. He also found that Mrs. Whiting upon occasion "consults her husband concerning the desirability of certain investments in areas of his expertise," but that "Mr. Whiting does not communicate with his wife concerning the affairs of [Dow]." 386 F.Supp. at 1132.

In December 1972 discussions were begun at the Goldstein office, Mr. and Mrs. Whiting being present, at which certain of the subjects were recorded as "Mr. Whiting's 1972 executive compensation award," joint contributions to their charitable foundation and "investment philosophy." They met with the advisors again on May 31, 1973 when, among other things, there was a discussion of estate planning, investments in municipal

---

**2.** Securities Exchange Act § 16(a), 15 U.S.C. § 78p(a), provides:

"(a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered pursuant to section 78*l* of this title, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement filed pursuant to section 78*l* (g) of this title, or within ten days after he becomes such beneficial owner, director, or officer, a statement with the Commission . . . of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been a change in such ownership during such month, shall file with the Commission . . . a statement indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month."

See also SEC Rule 16a–1, 17 C.F.R. § 240.16a–1.

SEC Securities Exchange Act Release No. 7793 (Jan. 19, 1966), as amended by Release No. 7824 (Feb. 14, 1966), requires insiders to include in such reports information concerning securities held by their family members. The impact of these rules and the Whitings' filings is discussed in greater detail below.

**3.** SEC Rule 16a–3, 17 C.F.R. § 240.16a–3, provides:

"Any person filing a statement may expressly declare therein that the filing of such statement shall not be construed as an admission that such person is, for the purpose of section 16 of the act, the beneficial owner of any equity securities covered by the statement."

**4.** SEC Rule 144, 17 C.F.R. § 230.144, effective April 15, 1972, requires that certain sales by "control" persons be reported to the SEC in advance. Mr. Whiting is such a person by virtue of his position as a Dow director, as is Mrs. Whiting by virtue of § 230.144(a)(2)(i), which includes "any relative or spouse" in the definition of those covered by these special reporting requirements. We do not suggest that such reporting is conclusive, see *Chemical Fund, Inc. v. Xerox Corp.*, 377 F.2d 107, 111 (2 Cir. 1967); *Levy v. Seaton*, 358 F.Supp. 1, 4 (S.D.N.Y.1973); but it has some bearing on the consciousness of the person filing that she and her spouse had better look to possible liability under § 16(b).

bonds and "whether Mr. Whiting should exercise his options in Dow Chemical in 1973 or 1974." A Goldstein executive was "to prepare a projection comparing the tax consequences of the sale of Dow stock versus the exercise of stock options." The reference to sales of Dow stock was in the context of the planning of sales of Mrs. Whiting's Dow stock.

The conference was resumed on October 29, 1973, when "[i]t was suggested that Mr. Whiting exercise his options in Dow Chemical, in total, this year, due to the adverse consequences which could result upon the exercise in 1974 if the proposed concept of minimum taxable income becomes law." The possible tax difference between exercise in 1973 and in 1974 was described as about $245,000. The question of the best method of funding the exercise of the option was discussed, together with "the *tax and economic consequences* of intra-family borrowing as opposed to borrowing from a third party" (emphasis added).

During the time these discussions were taking place, the pace of Mrs. Whiting's disposition of Dow stock was increased from 2% a year to 5% in the spring of 1973, and to 10% in the fall of 1973.[5]

Thus, while Mrs. Whiting was selling 29,770 shares of Dow stock in September and November, Mr. Whiting was buying, through exercise of the option, 21,420 shares in December. Mrs. Whiting was selling at an average price of $55–$56, while Mr. Whiting was buying at the fixed price of $24.3125.

As we have seen, Goldstein advised the Whitings on October 29 that Mr. Whiting should finance the exercise of his option by means of an intrafamily loan from his wife. Mr. Whiting explored the possibility of obtaining a personal loan through Harris Bank of Chicago, and he was quoted an interest rate of ¼% to ½% over the then prevailing prime lending rate of about 10%. Ultimately, for reasons not revealed by the record but apparent from the circumstances, Mr. Whiting informed the Harris Bank that "[w]e have been able to get the cash required *from sale of stock* and will not need the loan at this time" (emphasis added). The "sale of stock" to which Mr. Whiting referred was the very sale of Dow stock by Mrs. Whiting now at issue. Appellant borrowed the $520,000 he needed to exercise his option from his spouse and used it for that purpose. The loan was at 7% interest, and no repayment terms were specified.

II

It is strange that more than forty years of experience with Section 16(b) has yielded practically no judicial guidance on Section 16(b) liability concerning attribution of transactions *by the spouse* of a director.[6] But see *Blau v. Potter*, CCH Fed.Sec.L.Rptr. ¶ 94,115 (S.D.N.Y. 1973); *Schur v. Satzman*, 365 F.Supp. 725, 732 (S.D.N.Y.1973). And see *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 841 n. 4 (2 Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756

---

5. She actually sold about 15% of her Dow holdings in the calendar year 1973.

6. In *B. T. Babbitt, Inc. v. Lachner*, 332 F.2d 255 (2 Cir. 1964), the parties stipulated that transactions made by the spouse should be attributed to the insider. In *Jefferson Lake Sulphur Co. v. Walet*, 104 F.Supp. 20 (E.D.La. 1952), *aff'd*, 202 F.2d 433 (5 Cir.), *cert. denied*, 346 U.S. 820, 74 S.Ct. 35, 98 L.Ed. 346 (1953), the court held the insider liable for all profits realized on a short-swing sale of stock purchased and controlled by him, rejecting the insider's argument that his wife was deemed the "owner" of one-half of the profits under a state community property law.

In *Marquette Cement Mfg. Co. v. Andreas*, 239 F.Supp. 962 (S.D.N.Y.1965), the claim was

that an insider realized § 16(b) profits as a result of short-swing transactions by a number of family trusts. The court held the insider liable for the transactions by the trust of which he was a beneficiary, but *not* liable for transactions by the trust of which his wife was beneficiary. The court noted, however, that the insider's wife had "recognizably different interests" from the insider because they were separated at the time of the transactions at issue and divorced shortly thereafter. 239 F.Supp. at 967. That is not the situation here, and the court's analysis gives us no further help in resolving the issue presented on these facts.

(1969). The decision below proceeded on the assumption that, under the circumstances related, appellant was the "beneficial owner" of the securities sold by the wife.

Cases where the husband simply buys · stock and puts the shares in his wife's name are relatively simple; so, too, perhaps where he has sole control of her account. The difficulty arises when, as here, the securities are incontestably the wife's, but where the husband obtains benefits, nevertheless, from the dividends and proceeds of sale through the wife's supplying the larger share of family expenses. The problem is compounded by the action of both spouses in managing both the sales and the exercise of the option jointly, and further by the use of the proceeds of sale for the exercise of the option.

Judge Ward concluded that "there is no evidence that he controls her decisions concerning even the general aspects of her management of her estate." 386 F.Supp. at 1132. Appellant contends that the court's conclusion that there was no evidence of control mandates a declaratory judgment for the plaintiff. We cannot agree, for the legal conclusion depends upon the totality of the facts.

Recognizing that the wife has her separate estate, and that the husband does not "control" its disposition in the *exclusive* sense of the term, the question is whether the other indicia of their relationship are sufficient to bring the transactions under the rule of Section 16(b), as the District Court held.

The method to be used in interpreting the reach of § 16(b) has been the subject of judicial differences of opinion. See the respective arguments of Judge Medina and Judge Clark in *Blau v. Lehman,* 286 F.2d 786 (2 Cir. 1960).

Though the present Chief Justice believed that § 16(b) is "subject to that interpretation most consistent with the legislative purpose," *Adler v. Klawans,* 267 F.2d 840, 844 (2 Cir. 1959), he also concurred in *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972), where the Court said that "[a] person avoids liability if he does not meet the statutory definition of an 'insider.'" And the Court in *Blau v. Lehman,* 368 U.S. 403, 411, 82 S.Ct. 451, 456, 7 L.Ed.2d 403 (1962), rejected the argument "that the Act should be broadened . . . to prevent 'the unfair use of information' more effectively than can be accomplished by leaving the Act so as to require forfeiture of profits only by those specifically designated by Congress to suffer those losses."

Congress has made no specific provision for treating as an insider the spouse of an insider who has a separate estate, but the statute does require reporting by a director of securities of the issuer of which he is "the beneficial owner." § 16(a).[7] To find a director liable for a violation of § 16(b) with respect to purchases and sales of stock of which he is the "beneficial owner," we may consider whether the reporting provisions give meaning to the liability provisions. See *Lewis v. Varnes,* 505 F.2d 785, 788 (2 Cir. 1974).[8]

7. While in § 16(b), the liability section, the term "beneficial owner" apparently refers to a 10% owner as distinguished from a director or officer, and there is no further reference in that subsection to "beneficial owner" as an equitable owner, as well as a 10% owner, we read "such beneficial owner" to include both meanings.

8. Although we have recently said that "[f]or the purposes of § 16(b) . . . an 'insider' is one who is required to report his transactions under § 16(a)," *Lewis v. Varnes, supra,* 505 F.2d at 788, the statement was simply a

prelude to a finding of the negative—that the director there involved was *not* required to report the particular transaction. But see *Feder v. Martin Marietta Corp.,* 406 F.2d 260, 267–69 (2 Cir. 1969), *cert. denied,* 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970). A definition of "beneficial ownership" may be broad enough to require reporting for purposes of public exposure but too broad for the imposition of liability under § 16(b), as the Commission itself has said. *See* SEC Securities Exchange Act Release No. 4801 (Feb. 20, 1953).

The Securities and Exchange Commission has variously required the reporting of securities owned by the spouse of an insider when the insider had received "benefits substantially equivalent to ownership" by reason of his spouse's holdings or when the insider has the right to revest title to such shares in himself.[9] There appears to be no judicial decision squarely in support of the Commission's interpretation though there can be little doubt that the second part of the definition, not applicable here, is correct.

The question is whether the term "beneficial owner[ship]" includes securities from which the spouse has shared "benefits substantially equivalent to ownership." See SEC Securities Exchange Act Release No. 7793 (Jan. 19, 1966), quoted in the margin.[10]

In a traditional sense, in the absence of a statutory definition, a beneficial owner would be a person who does not have the legal title to the securities but who is, nevertheless, the beneficiary of a trust or a joint venture, or is a shareholder in a corporation which owns the shares. See, e. g., Marquette Cement Mfg. Co. v. Andreas, 239 F.Supp. 962, 966–67 (S.D.N.Y.1965). In the normal equity sense, Mr. Whiting would not be the beneficial owner of his wife's separate estate.

The Commission's definition seeks to go further to include situations where the insider indirectly benefits from the

---

9. See Shreve, *Beneficial Ownership of Securities Held by Family Members*, 22 Bus.Law. 431 (1967).

10. SEC Securities Exchange Act Release No. 7793 provides in pertinent part:

"The Securities and Exchange Commission is publishing this release to restate and clarify the meaning of 'beneficial ownership of securities' under the securities acts administered by the Commission as such term relates to the beneficial ownership of securities held in the name of family members.

"Although the discussion below relates to the reporting of beneficial ownership of securities under Section 16(a) of the Securities Exchange Act of 1934 (Exchange Act), it should be noted that generally the same principles apply to disclosing beneficial ownership in registration statements, annual reports, proxy statements, applications for registration as a broker-dealer or as an investment adviser, and statements of eligibility and qualification to act as indenture trustee under the securities acts where such disclosure is required.

"Section 16(a) of the Exchange Act requires every person owning beneficially, directly or indirectly, more than 10% of a class of equity security registered on a national securities exchange or registered pursuant to new Section 12(g) of the Act, or who is a director or an officer of the issuer of such security, to file an initial report disclosing the amount of each class of the issuer's equity securities, whether or not registered, which are beneficially owned by such person at the time the issuer's securities become registered, or at the time a person becomes such a director, officer or beneficial owner after registration. Thereafter, each such person must report any change in his beneficial ownership of the issuer's equity securities within 10 days after the end of each calendar month during which any change occurs. Persons required to file reports under Section 16(a) are also subject to Section 16(b) and (c) of the Act.

"Thus, the determination of whether a person is the beneficial owner of securities held in the name of his spouse, minor children or other relatives is significant in deciding whether such securities should be included in the reports filed by officers, directors and beneficial owners pursuant to Section 16(a). It is also significant in determining whether a person is subject to Section 16 as the beneficial owner of more than 10% of a class of registered equity security.

"Generally a person is regarded as the beneficial owner of securities held in the name of his or her spouse and their minor children. Absent special circumstances such relationship ordinarily results in such person obtaining benefits substantially equivalent to ownership, e. g., application of the income derived from such securities to maintain a common home, to meet expenses which such person otherwise would meet from other sources, or the ability to exercise a controlling influence over the purchase, sale, or voting of such securities. Accordingly, a person ordinarily should include in his reports filed pursuant to Section 16(a) securities held in the name of a spouse or minor children as being beneficially owned by him." (Footnotes omitted).