## ALTAMIL CORPORATION

v.

### Millard H. PRYOR, Sr.

### No. IP 74-297-C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Dec. 5, 1975.

Edward O. Delaney, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., for plaintiff.

Forrest Bowman, Jr., Bowman & Kammen, Indianapolis, Ind., for defendant.

## MEMORANDUM OPINION

NOLAND, District Judge.

This cause is before the Court upon the complaint of the plaintiff, Altamil Corporation (hereinafter "Altamil"), seeking to recover from the defendant, Millard H. Pryor, Sr. certain profits realized by the defendant's wife, Mary S. Pryor from the purchase and sale of certain shares of Altamil common stock.

The parties have submitted this cause to the Court for judgment, based upon a statement of stipulated facts, briefs of the parties, and the depositions of the defendant, Mrs. Pryor, and Mr. Gerald Canfield, former Chairman of Altamil's Board of Directors.

■ This action has been brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The Court has subject matter jurisdiction over Altamil's claim pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Section 16(b) provides in general that every person who is directly or indirectly the beneficial owner of more than ten percentum of any class of non-exempted equity security or who is a director or officer of the issuer of such security shall be liable to the issuer for any profit realized by such person from the purchase and sale of such security within any period of less than six months. This section imposes liability on the "insider" regardless of his motive or intent and regardless of the presence or absence of any improper use of inside information. *Champion Home Builders Co. v. Jeffress,* 490 F.2d 611 (6th Cir. 1974), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2390, 40 L.Ed.2d 763 (1974); *Bershad v. McDonough,* 428 F.2d 693 (7th Cir. 1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440 (1971).

The parties have stipulated that the defendant was a director of Altamil from February 12, 1971, to January 14, 1974, and during said period of time the defendant's wife realized certain profits from the purchase and sale of Altamil common stock, which stock was not exempted from the provisions of § 16(b). Such purchases and sales were made within a period of less than six months and a total profit was realized therefrom in the sum of $8,381.96. The defendant has not accounted for said profit with Altamil.

■ Since there are few cases dealing with the precise issue facing the Court herein, it is helpful to initially discuss the legislative purpose behind the enactment of § 16(b). The United States Supreme Court recently expressed the purpose of this section in the case of *Kern County Land Co. v. Occidental Corp.,* 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973) wherein the Court stated:

"Congress recognized that short-swing speculation by stockholders with advance, inside information would

threaten the goal of the Securities Exchange Act to 'insure the maintenance of fair and honest markets.' 15 U.S.C. § 78b. Insiders could exploit information not generally available to others to secure quick profits. As we have noted, 'the only method Congress deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great.' *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422 [92 S.Ct. 596, 599, 30 L.Ed.2d 575] (1972). As stated in the report of the Senate Committee, the bill aimed at protecting the public 'by preventing directors, officers, and principal stockholders of a corporation . . . from speculating in the stock on the basis of information not available to others.' S.Rep. No. 792, 73d Cong., 2d Sess., 9 (1934)." 411 U.S. at 591–592, 93 S.Ct. at 1743.

See also the cases cited below recognizing that one of the primary purposes of the section, commonly referred to as the "short-swing profits rule", is to prevent directors, officers, and principal stockholders from speculating in the stock of the corporation to which they owe a fiduciary duty and thereby directly or indirectly benefit from such speculation. *American Standard, Inc. v. Crane,* 510 F.2d 1043 (2nd Cir. 1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975); *Gold v. Sloan,* 486 F.2d 340 (4th Cir. 1973), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974); *Whiting v. Dow Chemical Company,* 386 F.Supp. 1130 (S.D.N.Y.1974), *aff'd,* 523 F.2d 680 (2nd Cir. 1975). However, it must be emphasized that the rule is an objective one and does not reach every transaction in which an investor actually relies on inside information, or in which the potential for such reliance is great. The statute was drafted with limited areas of clear or unambiguous liability in order to create a "prophylactic" effect. *Blau v. Lehman,* 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962); *Lewis v. Varnes,* 505 F.2d 785 (2nd Cir. 1974). It

is within this framework that the Court must consider the facts presented in the case at bar and decide whether the defendant is liable to Altamil under § 16(b) for the profits obtained by his wife on the purchase and sale of Altamil stock.

The depositions submitted herein demonstrate the following facts to be pertinent to Altamil's action. During all times relevant to this action the defendant was a director of Altamil Corporation. Prior to the defendant's becoming a director of Altamil, a family security management corporation under the name of Pryor and Company was established for the purpose of managing certain of Mrs. Pryor's assets and those of other family members. The defendant was President of this corporation and, as a result, had personal control over the transactions including Altamil stock held in the name of his wife. Although it is disputed whether the defendant or his wife decided how proxies of the stock in the name of Mrs. Pryor were to be voted, it is clear that the defendant exercised complete control over the purchases and sales of Altamil stock held by Pryor and Company in the name of Mrs. Pryor. The defendant testified this was natural because he had the contacts and the knowledge of the transactions, and his wife indicated that she followed the defendant's recommendations and allowed him to execute the transactions for her. Mrs. Pryor testified she has no independent recollection of the Altamil transactions in dispute herein.

In October of 1973, the defendant and his wife sold their entire holdings of Altamil stock at a private sale arranged by G. L. Canfield, who was the Chairman of the Board and primary shareholder of Altamil. The shares of the defendant and his wife were sold at a price of $7.50 per share, which was approximately $3.50 per share in excess of its prevailing market price at the time of the sale. It is undisputed that the opportunity for the transactions at such a favorable price arose because of the defendant's close relationship with Altamil and Mr.

Canfield. The defendant has returned the sum of $1,112.44 to Altamil representing the profit he realized in violation of § 16(b) on the sale of Altamil stock held in his own name on October 3, 1974, but the defendant contends that he was not the beneficial owner of the Altamil shares held in his wife's name which were sold on October 3, 1974. Thus, he asserts that he is not liable under § 16(b) for the profits realized on the sale of such shares.

In examining the defendant's family history and present situation it appears the defendant and his wife were married in 1931 and his wife brought no significant property into the marriage. From time to time since their marriage the defendant has made substantial gifts to his wife and gift tax returns were filed with respect to such transfers. Mrs. Pryor has maintained such property and the gains therefrom in her own name. She has earned a small amount of income as a writer. While she maintains her own separate bank accounts, she makes no contribution toward family expenses or her own support, except that she has made charitable gifts and purchases her own automobile out of her own funds. The defendant and his wife maintain a joint checking account out of which the household expenses and related obligations are paid, but it appears that the defendant makes all of the contributions to said account out of his own funds. It thus appears to the Court that the profits obtained from the sale of Altamil stock have been maintained by the defendant's wife in her own separate accounts and have not been used to support either herself or the defendant, nor to satisfy the expenses and obligations connected with maintaining the defendant's household. However, the Court concludes that the defendant has indirectly benefited and may benefit in the future from the profits realized by his wife on the transactions in question and, therefore, he is liable to Altamil on its complaint herein.

The defendant contends that the existence of the marital relationship alone is not sufficient to attribute to him beneficial ownership of his wife's shares. The defendant relies on the cases of *Marquette Cement Manufacturing Co. v. Andreas,* 239 F.Supp. 962 (S.D.N.Y.1962) and *Blau v. Potter,* CCH Fed.Sec.L.Rep. ¶ 94.115 (S.D.N.Y.1973), which dealt with situations somewhat similar to the case at bar. The *Potter* case is distinguishable from this case in that the wife therein was financially independent before her marriage and controlled her own investments. In the above cases the Court concluded that the stock transactions in question should not be attributed to the defendant-insider because he received no benefit from such transactions. The defendant herein asserts that since the profits realized by his wife were segregated from his own funds and have not been used to help support the defendant's household, then he has not benefited financially and is not liable under § 16(b) for such profits.

The Court does not agree with the defendant's analysis. Merely because the profits realized by the defendant's wife on the transaction in question have not directly benefited the defendant as to the support and maintenance of his household, does not mean that the defendant has not indirectly benefited from such profits or that he won't benefit in the future therefrom. There is testimony to the effect that since the defendant's wife entered into her marriage with the defendant, substantial transfers have been made from the defendant to his wife for the apparent purpose of achieving a more favorable family estate program. Mrs. Pryor testified she may now have a net worth in the neighborhood of $1,000,000 which, of course, has all been accumulated since her marriage. To the extent she can profit from favorable stock transactions made possible by reason of the defendant's close relationship with Altamil, the defendant may not feel the need to make taxable transfers to his wife. To this extent the defendant would directly benefit from such profits. The defendant's deposition indicates he had a prac-

tice of making regular transfers to his wife, but those transfers have apparently terminated in recent years. *See, e. g.,* the case of *Schur v. Salzman,* 365 F.Supp. 725 (S.D.N.Y.1973), where the Court held that absent special circumstances, a husband who consistently acts to build up his wife's separate estate and who controls her investments is liable under § 16(b) as a 'beneficial owner' for short-swing profits obtained by his wife from the purchase and sale of shares in a corporation of which he is a director.

The Court also recognizes that to the extent Michigan law and the law of most states allows a surviving spouse to elect to take against the will of his or her deceased spouse, the defendant may benefit from any and all profits realized by his wife on stock transactions occurring during her lifetime.

In the recent case of *Whiting v. Dow Chemical Company,* 386 F.Supp. 1130 (S.D.N.Y.1974), *aff'd,* 523 F.2d 680 (2nd Cir. 1975), the district court was faced with a situation closely analogous to the one herein. In that case the husband was a director of Dow Chemical and regularly gave his wife investment advice concerning the trading of Dow Chemical stock. While the Court recognized that the wife did not always follow her husband's advice, the Court found:

"The ability to exercise a controlling influence over sales and purchases of the spouse's shares, particularly when combined with a substantial common interest in mutual prosperity, indicates that the family situation is susceptible to the abuses which § 16(b) was designed to prevent." 386 F.Supp. at 1136–1137.

The district court held that the policies of § 16(b) are not served if liability is imposed only where the spouse is the "alter ego" of the insider. The Second Circuit on appeal relied on the case of *Lewis v. Varnes,* 505 F.2d 785 (2nd Cir. 1974) and two releases of the Securities Exchange Commission [Securities Exchange Act Release No. 7793 (Jan. 19, 1966) and No. 7824 (Feb. 14, 1966)] to

hold that the reporting provisions of § 16(a) may be helpful to determine the legislative intent of § 16(b), but that the facts of each particular case will be controlling as to § 16(b) liability. 523 F.2d at 687. The Court relied on the legislative purpose of § 16(b) to affirm the district court's finding of liability under such section in light of the tremendous potential for abuse of § 16(b) by means of intra-family "arrangements."

The defendant herein contends that the *Whiting* case is not controlling in this case because therein the profits of the sale were used by the insider and his wife jointly for purposes of household and family support, while no such situation exists herein. While the Court agrees the cases are distinguishable on that basis, it does not believe that such a distinction compels a judgment for the defendant herein. In the *Whiting* case the insider did not exercise complete control over his wife's investments as is the situation herein. Also, in *Whiting* the wife brought a significant estate into her marriage, whereas in this case the defendant made substantial transfers to his wife for the purpose of making better use of estate planning possibilities.

The Court believes that weighing all of the evidence leads it to the conclusion that the defendant has benefited from the profits realized by his wife on the transactions in question and, therefore, he is liable as a "beneficial owner" under § 16(b). To the extent an insider can exercise complete control over transactions of corporate stock held in his wife's name and, thereby, increase his wife's individual estate, the Court believes such insider has acted as the "beneficial owner" of such stock and improperly benefited in violation of the policy and purpose of § 16(b). *Cf. Blau v. Mission Corp.,* 212 F.2d 77, 80 (2nd Cir. 1954), *cert. denied,* 347 U.S. 1016, 74 S.Ct. 872, 98 L.Ed. 1138 (1954) and *Feder v. Martin Marietta Corp.,* 406 F.2d 260, 263–66 (2nd Cir. 1969) *cert. denied,* 396 U.S. 1036, 90 S.Ct. 678, 24 L.Ed.2d 681 (1970). While the above cases involve inter-corporate rather than intra-family transac-

tions, the Court feels the same rationale is applicable herein. The Second Circuit in *Whiting* felt this interpretation does not improperly expand the limits of § 16(b) liability established in *Blau v. Lehman,* 368 U.S. 403, 411, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962). *See* 523 F.2d at 689.

■ The purpose and intent of § 16(b) is to prevent insiders from trading on a short-term basis in stock of the corporation to which they have a fiduciary duty. This purpose is violated if the insider does the trading under the name of his wife and, thereafter, realizes some direct or indirect benefit therefrom.

Specific findings of fact and conclusions of law are incorporated herein as authorized by Rule 52 of the Federal Rules of Civil Procedure.

Judgment is hereby entered for the plaintiff herein in the sum of $8,381.96 plus interest at the legal rate from October 3, 1973.

It is so ordered.