**CBI INDUSTRIES, INC., Plaintiff,**

v.

**John T. HORTON, Defendant.**

**No. 81 C 3597.**

United States District Court,
N. D. Illinois, E. D.

Jan. 28, 1982.

Cordell J. Overgaard and Michael M. Conway, Hopkins & Sutter, Chicago, Ill., for plaintiff.

Calvin Sawyier, Winston & Strawn, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

The plaintiff, CBI Industries, Inc. (CBI), a Delaware corporation with its principal place of business in Oak Brook, Illinois, brings this claim for recovery of short swing profits realized by defendant, John T. Horton (Horton), director of CBI since 1979, allegedly in violation of section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Before the court are the parties' cross motions for summary judgment. For reasons hereinafter stated, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.

Defendant Horton and the Continental Illinois National Bank and Trust Company of Chicago (Continental) have been co-trustees of the John Mark Horton Trust (John Mark Trust) and Horace Howard Horton Trust (Horace Trust) since 1965. John Mark and Horace Howard Horton are defendant Horton's sons. Plaintiff CBI alleges that on October 20, 1980, Horton, while serving as a director of CBI, sold on the open market 3,000 shares of CBI common stock for $61.50 per share. In addition, CBI alleges that Horton suggested to Continental that the John Mark Trust and Horace Trust purchase 2,000 shares of CBI's common stock. On March 24, 1981, the John Mark Trust and Horace Trust each purchased on the open market 1,000 shares of CBI's common stock at $48.875 per share. CBI alleges, as a result of the aforementioned transactions, that defendant Horton realized the sum of $25,250 in violation of section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). Horton, in response, denies beneficial ownership of the securities and thus alleges that he received no profit from the transactions.

Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), provides that officers, directors and holders of more than 10% of the publicly listed stock of a company shall be liable to the company for any profits realized from any purchases and sales or sale and purchase of such stock within a six month period. The purpose of section 16(b) is to prevent insiders from trading on a short-term basis in stock of corporations to which they have a fiduciary duty. This purpose is violated if an insider trades under the name of a family member and, thereafter, realizes some direct or indirect benefit. *Altamil Corp. v. Pryor*, 405 F.Supp. 1222 (S.D.Ind.1975). In short swing profits involving family members, a court must focus on the insider's relationship to the family member, the insider's control or lack of control over the funds, and the insider's interest in the transaction to impute to that insider the resulting profits. The two key factors are the degree of insider control and the insid-

er's ability to use the profits realized. *Whittaker v. Whittaker Corp.*, 639 F.2d 516 (9th Cir. 1981). Considering these elements in the context of the undisputed facts of the case before it, this court finds that Horton in his position as Trustee of the Trusts, is the beneficial owner of the 2,000 CBI shares purchased in March, 1981 as a matter of law.

Horton contends that since the profits realized by his sons' trusts were segregated from his own funds, he has not realized a profit from the stock in question and therefore is not liable under section 16(b). Horton's analysis is simply untenable. There is no question that Horton, as co-trustee, has maintained control over the funds of the Trusts. Horton has acted as the custodian and has had signatory authority in his fiduciary capacity as custodian of the Trusts. As co-trustees of the Trusts, Horton and Continental have jointly exercised control over all investments made by the Trusts, including the timing of purchases and sales of securities by the Trusts.[1] Additionally, Horton has a contingent remainder interest in the Trusts which would vest if his sons die before reaching 25 years of age.

There is also no question that Horton has realized benefit from his operation of the Trusts. In this context, the court notes that "benefits," for the purposes of section 16(b), need not be "direct" in order for an insider to be held liable under the section. As the court in *Altamil Corp. v. Pryor, supra,* stated on facts similar to those before this court;

> Merely because the profits realized by the defendant's wife on the transaction in question have not directly benefited the defendant as to the support and maintenance of his household, does not mean that the defendant has not indirectly benefited from such profits or that he won't benefit in the future therefrom.

405 F.Supp. at 1225.

The *Altamil* court found benefits to the insider husband from his wife's profits from stock purchases and sales on a theory that such profits lessened the need for the husband to make transfers to his wife.

> To the extent she can profit from favorable stock transactions made possible by reason of the defendant's close relationship with Altamil, the defendant may not feel the need to make taxable transfers to his wife.

405 F.Supp. at 1225.

In this case, facts are present which are equally appropriate for application of the theory of "benefit" found controlling on the issue of section 16(b) liability by the *Altamil* court. The Trusts directly benefit Horton's sons. While both sons have reached their majority, each remains a full-time student. Horton supports John Mark fully, though not Horace Howard.

The facts indicate that John Mark Horton receives the current income from the John Mark Horton Trust. The income is paid into a NOW account at the Beverly Bank, Chicago, Illinois. Funds have been drawn from this account by Horton as custodian to pay (i) John Mark's taxes, (ii) life insurance premiums on a policy insuring John Mark, (iii) life insurance premiums on a policy owned by John Mark insuring the life of defendant Horton, (iv) interest on funds borrowed from the Beverly Bank for investments, (v) for investments in oil and gas ventures, money market fund shares and other investments made in the name of Horton, as custodian, and (vi) professional fees for preparation of tax returns and limited partnership papers.

The situation of Horace Howard Horton is similar. Until November, 1980, when Horace Howard reached 21 years of age, Horton paid the full support and costs of education for Horace Howard. Since that date, Horace Howard has paid his own educational and living expenses. Like his brother, Horace Howard spends approximately two weeks per year residing with Horton, with the remaining time spent living at school or with relatives abroad. Horace Howard receives the current income from the Horace Howard Trust. The in-

---

1. The Trusts have authorized Horton to invest in shares of the Chicago Bridge and Iron Company, CBI's predecessor and any successor company, including CBI.

come is paid into a bank account at the Beverly Bank, Chicago, Illinois. From June 1979 to approximately November 15, 1980, the account was maintained in the name of Horace Howard, but Horton was the custodian of the account and had signatory authority in his fiduciary capacity as custodian. During this period funds in Horace Howard's account were used for the same types of purposes as withdrawals from John Mark's account had been used for John Mark.

It is a reasonable inference that the income from the Trusts provides for the economic security and well-being of his sons, thereby lessening or eliminating any need for Horton to make gifts to them.[2] In fact, from January 1, 1980 to June 30, 1981 Horton made no gifts to either John Mark or Horace Howard.

For the foregoing reasons, plaintiff CBI's motion for summary judgment is granted and defendant Horton's motion for summary judgment is denied. Judgment is entered in favor of the plaintiff in the amount of $25,250.

IT IS SO ORDERED.

2. While a normal interest in seeing family members "well and comfortable" may not be enough to impose section 16(b) liability, *Marquette Cement Mfg. Co. v. Andreas*, 239 F.Supp. 862, 967 (S.D.N.Y.1965), if profits substitute for the insider's payments for the benefit of his children—whether required or simply voluntary gifts—the insider realizes the benefit of the profits arising from the short swing transaction.