David COLAN, Plaintiff-Appellant,

v.

MONUMENTAL CORPORATION, Kaufman and Broad, Inc., Sun Life Group, Inc., and Sun Life Insurance Company of America, Defendants-Appellees.

No. 83–1204.

United States Court of Appeals, Seventh Circuit.

Argued June 10, 1983.

Decided Aug. 4, 1983.

Seymour A. Oliff, Chicago, Ill., for plaintiff-appellant.

Michael W. Schwartz, Wachtell, Lipton, Rosen & Katz, New York City, for defendants-appellees.

Before PELL and BAUER, Circuit Judges, and DUMBAULD, Senior District Judge.[*]

PELL, Circuit Judge.

Plaintiff filed this derivative action on behalf of nominal defendant Monumental Corporation to recover short-swing profits allegedly made by the remaining defendants (K & B defendants) in violation of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). The district court, in a thorough written opinion, granted the K & B defendants' motion for summary judgment.

[*] Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

## I. FACTS

There is no dispute concerning the events that led to this suit. On November 14, 1978, the K & B defendants owned 4.92% of Monumental's outstanding common stock. On November 16, 1978, the K & B defendants acquired an option to purchase an additional 5.15% of Monumental's outstanding stock from Salomon Brothers (Salomon option) and a similar option for 6.76% of Monumental's stock from Goldman Sachs & Co. (Goldman option). Both options contained clauses that prohibited their exercise "to the extent that approval, or absence of disapproval, of the Commissioner of Insurance of the State of Maryland or the State of Tennessee is required ... unless such approval, or absence of disapproval, [is] obtained." The K & B defendants filed applications with the respective commissioners seeking the requisite approval.

On March 13, 1979, prior to rulings by either commissioner, the K & B defendants exercised the Salomon option, which brought their ownership to 10.06% of Monumental's common stock. On March 16, 1979, the Tennessee Commissioner of Insurance approved the defendants' application, but four days later the Maryland Commissioner rejected their application. The Maryland Commissioner ordered that the K & B defendants not exercise the Goldman option and that they show cause why they should not be required to divest themselves of the stock acquired through the Salomon option.

On April 24, 1979, the K & B defendants sold 4,000 shares of their Monumental stock on the open market, thereby reducing their holdings in the company to less than 10% of the common stock. On May 15, 1979, with the approval of the Maryland Commissioner, the K & B defendants and Monumental entered into an agreement under which Monumental would purchase all of the K & B defendants' Monumental stock, including the stock to be acquired through exercise of

the Goldman option. The day after the agreement was entered into, the K & B defendants exercised the Goldman option.[1]

## II. "Beneficial Owner" Under § 16(b)

Plaintiff claims that the K & B defendants' dealings in Monumental stock were in violation of § 16(b) of the Securities Exchange Act of 1934, and seeks to recover the resulting profits. The relevant portions of the Act are sections 16(a) and 16(b), which provide that:

(a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of an equity security ... shall file, at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement ... or within ten days after he becomes such beneficial owner ... a statement indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month.

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner ... any profit realized by him from any purchase and sale, or any sale and purchase, of an equity security of such issuer ... within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner.... This subsection shall not be construed to cover any transaction where such owner was not such both at the time of the purchase and sale, or sale and purchase, of the security involved.

Plaintiff contends that ownership of the unexercised options made the K & B defendants "beneficial owners" of the underlying stock they could acquire through exercise of the options. Plaintiff argues that this result is mandated by SEC Rule

---

1. Plaintiff has argued at great length that we should treat the Goldman option as having been exercised before the underlying stock was sold to Monumental. We agree with the district court that there is no need to resolve this claim as the result is the same regardless of the sequence of these events.

16a–2(b), 17 C.F.R. § 240.16a–2(b) (1982), which provides that:

In determining for the purpose of Section 16(a) of the Act whether a person is the beneficial owner, directly, or indirectly, of more than ten percent of any class of equity securities, such person shall be deemed to be the beneficial owner of securities of such class which such person has the right to acquire through the exercise of presently exercisable options, warrants or rights.

■ Plaintiff reasons that because § 16(b) refers to § 16(a) in defining "beneficial owner," then Rule 16a–2(b) is as equally applicable to § 16(b) as it is to § 16(a). The district court did not find this syllogism persuasive, and neither do we.

The major premise of plaintiff's argument is that a person who is a beneficial owner for § 16(a) purposes is a beneficial owner for § 16(b) purposes. While it is true that the subsections are grammatically linked, and that there is a strong relationship between the definition of beneficial owner in § 16(a) and the definition in § 16(b), this does not mean that we must blindly apply § 16(b) to every person who falls within the ambit of § 16(a). The SEC recognized as much when it stated that:

The fact that ownership of securities and transactions in those securities are reported under Section 16(a) of the Securities Exchange Act of 1934 does not necessarily mean that liability will result therefrom under Section 16(b). The question whether liabilities under Section 16(b) will arise from transactions is, of course, to be determined by the facts of each particular case in an appropriate action brought by the issuer or its security holders.

SEC Release No. 34–7824, reprinted in Fed. Sec.L.Rep. (CCH) ¶ 26,030 (February 14, 1966); *see also Whittaker v. Whittaker Corp.,* 639 F.2d 516, 525 (9th Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473; *Whiting v. Dow Chemical Co.,* 523 F.2d 680 (2d Cir.1975). That the K & B defendants were obligated to report their dealings in Monumental stock under

§ 16(a), then, does not answer our inquiry. Rather, we must determine whether they were beneficial owners for purposes of § 16(b). Rule 16a–2(b), which expressly states that its definition is to be used "[i]n determining *for the purpose of Section 16(a)* of the Act whether a person is the beneficial owner ... of more than ten percent of any class of equity securities," (emphasis added), is of little help.

■ In deciding whether ownership of an option to buy an equity security makes one a beneficial owner of that security we must keep in mind that the purpose of section 16(b) is to curb speculative abuses by those with access to inside information. *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 424, 92 S.Ct. 596, 600, 30 L.Ed.2d 575 (1972); *Portnoy v. Revlon,* 650 F.2d 895 (7th Cir.1981); *Whittaker v. Whittaker Corp., supra.* Despite plaintiff's claim to the contrary, this case cannot be decided by analogizing ownership of an option to ownership of a convertible debenture. Ownership of an option, which represents no more than a contractual right to acquire stock in the future, simply does not present the same potential for access to inside information as does ownership of a convertible debenture that, if converted, would yield ownership of ten percent of a class of stock. Rather than rely on an inapt analogy, we will examine the potential for abuse presented by an unexercised option to buy stock.

Section 16(b) proscribes short-term trades by one owning more than ten percent of a class of equity securities on the not unreasonable assumption that one owning that large a percentage of a company will have access to inside information and would, like any other insider, give in to the temptation to abuse that knowledge to make a profit. *Kern County Land Co. v. Occidental Corp.,* 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); *Foremost-McKesson v. Provident Securities Co.,* 423 U.S. 232, 243, 96 S.Ct. 508, 516, 46 L.Ed.2d 464 (1976). Those courts that have considered whether ownership of an option to buy stock presents this potential for abuse agree that an option to

buy, without more, does not provide access to inside information and therefore does not present the potential for speculative abuse that stock ownership does. Ownership of an unexercised option will confer beneficial ownership only when the option carries with it rights of ownership. *See Newmark v. RKO General, Inc.,* 425 F.2d 348 (2d Cir.1970), *cert. denied,* 400 U.S. 854, 91 S.Ct. 64, 27 L.Ed.2d 91 (option holder who was assured that company would be managed in his interests was beneficial owner); *Sherman Dean Fund, Inc. v. Potamkin,* 77 Civ. 1549, slip op. at 4 (S.D.N.Y. October 24, 1978). Ownership of an option that confers no right of stock ownership does not make one a beneficial owner of the stock one can acquire through exercise of the option until one incurs an irrevocable liability to pay for the stock, which is usually when the option is exercised. *Blau v. Ogsbury,* 210 F.2d 426 (2d Cir.1954); *Stella v. Graham-Paige Motors Corp.,* 232 F.2d 299, 301 (2d Cir.1956).

Despite this precedent, and despite his admission that a "purchase" or a "sale" of stock for section 16(a) purposes takes place upon the exercise of an option, *Portnoy v. Revlon, supra,* plaintiff claims that one may be a beneficial owner of stock by virtue of ownership of an unexercised option. If this were true, then one would be treated as owning stock that one had not yet purchased, and which was still owned by the seller. Not only does this result appear illogical, it also circumvents the express limitation in § 16(b) that "[t]his subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale ... of the security involved." One is only subject to § 16(b) liability for purchases and sales made while one owns at least ten percent of that class of stock; a stock purchase that brings one's ownership to over ten percent is not covered by § 16(b). *Foremost-McKesson, Inc. v. Provident Securities Co.,* 423 U.S. 232, 96 S.Ct. 508, 46 L.Ed.2d 464 (1976). Under plaintiff's analysis, however, such a purchase of stock, if accomplished through the exercise of an option, would bring with it liability under § 16(b) as the purchaser would already be the beneficial owner of the stock. We would be hesitant to adopt any construction of § 16(b) that thwarted Congress' intent in such a way even if the construction was itself more plausible. Accordingly, we hold that ownership of an option to. buy stock, but which carries no other rights of stock ownership, does not make one a beneficial owner of the stock for the purpose of § 16(b). As defendants were not beneficial owners, we need not consider whether the options involved here were in fact presently exercisable despite the requirement that the respective commissioners give prior approval.

### III. § 16(b) Liability

As we noted previously, the K & B defendants would only be liable if they made both a sale and purchase within six months while they were beneficial owners of at least ten percent of Monumental's common stock. The exercise of the Salomon option was not a purchase within the scope of § 16(b) as defendants did not own at least ten percent of the stock before the purchase. The subsequent open market sale of 4,000 shares was a § 16(b) sale, but there is no § 16(b) purchase with which to match it, and therefore no § 16(b) liability. That defendants sold this stock solely to bring their holdings in Monumental below ten percent, and thereby shield later transactions, is of no consequence. "Liability cannot be imposed simply because the investor structured his transaction with the intent of avoiding liability under § 16(b)." *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972). Regardless of how we sequence the subsequent exercise of the Goldman option and sale to Monumental, there is no purchase within the coverage of § 16(b), and consequently no liability.

For the reasons stated in this opinion, the decision of the district court is AFFIRMED.